**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PERSONAL AUDIO, LLC, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>CBS CORPORATION, )<br>)<br>*Defendant*. )<br>) | Civil Action No. 2:13-cv-00270-JRG<br>Jury Trial Demanded |
| PERSONAL AUDIO, LLC, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>NBCUNIVERSAL MEDIA, LLC, )<br>)<br>*Defendant*. )<br>) | Civil Action No. 2:13-cv-00271-JRG<br>Jury Trial Demanded |

**DEFENDANTS' JOINT MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)
TO THE SOUTHERN DISTRICT OF NEW YORK**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................1

II. BACKGROUND FACTS.....................................................................................................2

III. THE LAW GOVERNING TRANSFER ..............................................................................5

IV. SUMMARY OF ARGUMENT ............................................................................................6

V. ARGUMENT........................................................................................................................6

    A. The Southern District of New York is a Proper Venue for These Actions..............6

    B. The Private Interest Factors Clearly Favor Transfer to the Southern District of New York. ........................................................................................................7

        1. The first three private interest factors strongly favor transfer .....................7

            a. Critical third-party and party witnesses are located in or near the Southern District of New York.......................................................7

            b. No relevant witnesses are located in the Eastern District of Texas.................................................................................................10

            c. The Bulk of the Relevant documents are located in New York ....11

        2. Other practical factors favor transfer to the Southern District of New York...............................................................................................12

    C. The Public Interest Factors Also Favor Transfer...................................................12

        1. Court congestion and administration are neutral towards transfer to the Southern District of New York ...........................................................13

        2. The Southern District of New York has a local interest ............................14

        3. Neither familiarity with the applicable law nor avoidance of conflicts favors either forum......................................................................14

VI. CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*ATEN Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*,
 261 F.R.D. 112 (E.D. Tex. 2009) .................................................................................. 5, 12

*Fujitsu Ltd. v. Tellabs, Inc.*,
 639 F. Supp. 2d 765 (E.D. Tex. 2009) .......................................................................... 5, 14

*In Re Apple Inc.*,
 374 Fed. Appx. 997 (Fed. Cir., May 12, 2010) ............................................................. 3, 11

*In re Genentech, Inc.*,
 566 F.3d 1338 (Fed. Cir. 2009) ............................................................................. 11, 13, 15

*In re TS Tech USA Corp.*,
 551 F.3d 1315 (Fed. Cir. 2008) ...................................................................................... 5, 14

*In re Volkswagen of Am., Inc.*,
 545 F.3d 304 (5th Cir. 2008) .................................................................................. 5, 6, 7, 14

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
 No. 6:09-CV-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010) ...................................... 5, 7

*Personal Audio, LLC v. Apple, Inc.*,
 No. 9:09-cv-00111-RC, D.I. 72 (E.D. Tex. Feb. 11, 2010 Order) ............................................. 3

*Rembrandt,*
 2011 U.S. Dist. LEXIS 78312 ........................................................................................ 14, 15

*U.S. Ethernet Innovations v. Acer, Inc.*,
 No. 6:09-cv-448-JDL, 2010 WL 2771842 (E.D. Tex. July 13, 2010) ................................. 7, 11

*Vigilos, LLC v. Sling Media*,
 No. 2:11-CV-112-DF (E.D. Tex. July 25, 2011) ..................................................................... 13

**Statutes**

28 U.S.C. § 1391(c) ...................................................................................................................... 6

28 U.S.C. § 1400(b) ...................................................................................................................... 6

**Rules**

Fed. R. Civ. P. 45(b)(2) ................................................................................................................. 8

I.      INTRODUCTION

Defendants CBS Corporation ("CBS") and NBCUniversal Media, LLC ("NBC") (collectively, "Defendants") respectfully move this Court to transfer these actions to the Southern District of New York. These actions, both filed on April 11, 2013, are in their infancy. Discovery has not yet begun and this Court has not yet entered a scheduling order in either action. These actions have been brought by a non-practicing entity, Personal Audio, LLC ("Personal Audio"), that has, according to published media reports, threatened hundreds, if not thousands, of entities with potential lawsuits for infringement of the patent-in-suit. Personal Audio, while allegedly "based" in Beaumont, was founded by James D. Logan, who is also the first named inventor on the patent-in-suit. Defendants believe that Mr. Logan resides in either New Hampshire or Massachusetts. None of the other inventors of the patent-in-suit reside in Texas; one resides in Florida and the other in Illinois. Richard Baker, Personal Audio's Vice President of Licensing, who just appeared on an NPR radio broadcast regarding Personal Audio, lives and works in Massachusetts. Personal Audio's lead outside counsel, Jeremy Pitcock, has his offices in New York City.[1] In short, Personal Audio's contacts with the Eastern District of Texas are fairly characterized as ephemeral. By contrast, both NBC and CBS are, as Plaintiff alleges, headquartered in the Southern District of New York.

This suit could have been filed in the Southern District of New York, which is a significantly more convenient forum for at least the following reasons:

- Third-party technical witnesses Harris Media, LLC; Paul Bronshteyn; and Jacques Dupoux are situated in or near the Southern District of New York and have the most knowledge regarding the design, development and/or operation of the accused systems used by CBS.

---

[1] Even Personal Audio's Texas counsel is not resident in the Eastern District of Texas, having its offices in Dallas.

1

- Dustin Gervais, a CBS technical witness, has in-depth personal knowledge regarding the process CBS Radio News uses to distribute the CBS Radio News podcasts and is located in the Southern District of New York.

- The vast majority of the NBC employees who are or were involved in the design, development and/or use of the accused systems used by NBC are located in the Southern District of New York and surrounding areas, and none are located in this District.

- Defendants' documents are primarily situated in the Southern District of New York

- The Southern District of New York has a local interest in these actions because both Defendants are headquartered in the Southern District of New York and have thousands of employees there.

In sum, the Southern District of New York is a more convenient forum for these actions. It is home to both the largest number of party witnesses and to several significant third-party witnesses, as well as the bulk of the relevant evidence. In contrast, there are no witnesses at all who work or reside in this District. None of the applicable public or private interest factors favors maintaining the case in this District. Since, taken as a whole, the factors governing transfer weigh in favor of transfer, Defendants' motion to transfer should be granted.

## II. BACKGROUND FACTS

Plaintiff Personal Audio, LLC. ("Personal Audio") alleges that Defendants infringe U.S. Patent No. 8,112,504 ("the '504 patent"). The '504 patent issued on February 7, 2012. The inventors of the '504 patent are identified as James D. Logan of Candia, NH, Daniel F. Goessling of Arlington, MA, and Charles G. Call of Chicago, IL. None of the inventors lived in this District at the time of the invention nor, to the best of Defendants' knowledge, do they live in this District today.

Personal Audio is a Texas limited liability company, and purports to have a principal place of business at 3827 Phelan Blvd., Suite 180, Beaumont, Texas 77707. *See* First Amended

Complaints at ¶ 2. Personal Audio was organized by Mr. Logan and Mr. Call. *See Personal Audio, LLC v. Apple, Inc.*, No. 9:09-cv-00111-RC, D.I. 72 at 3 (E.D. Tex. Feb. 11, 2010 Order) (Clark, J.), *aff'd, In re Apple, Inc.* 374 Fed. Appx. 997, at *1 (Fed. Cir., May 12, 2010). Mr. Logan lives in Candia, New Hampshire, and Mr. Call lives primarily in Marco Island, Florida. *Id*.

Between 2009 and 2011, Personal Audio sued a number of entities for infringement of U.S. Patent Nos. 6,199,076 ("the '076 patent") and 7,509,178 ("the '178 patent").[2] These cases were assigned to Judge Clark, and all have now been resolved. While the '504 patent is a division of the '178 patent, which is a division of the '076 patent, the only claim of the '504 patent that Plaintiff has specifically identified as being infringed is claim 31, and claim 31 is directed to a different technology than the technology to which the claims of the '076 and '178 patents are directed. Specifically, the claims of the '076 and '178 patents are directed to audio players (*e.g.*, iPod-like devices) for *playing* audio content, whereas claim 31 of the '504 patent is directed to an apparatus for *disseminating* a series of episodes represented by media files via the Internet.

In one of the earlier cases previously before Judge Clark, the defendants moved to transfer to the District of Massachusetts. In opposing the motion, Personal Audio did not identify a single witness in this District (or elsewhere in Texas). Judge Clark denied the motion principally because none of the moving defendants had any significant connections with or witnesses in Massachusetts (the moving defendants were headquartered in California, Colorado, and New York). *See Personal Audio*, No. 9:09-cv-00111-RC, D.I. 72 at *3.

---

[2] *See* case nos. 09-cv-00111 , 10-cv-00035, 11-cv-00120, 11-cv-00432, 11-cv-00531, and 11-cv-00655.

In addition to suing CBS and NBC for infringement of the '504 patent, Personal Audio has also sued Togi Entertainment, Inc. (no. 2013-cv-00013), Ace Broadcasting Network, LLC (no. 2013-cv-00014), and Howstuffworks.com (no. 2013-cv-00015) in this Court for infringement of the '504 patent. Discovery has not begun for any case involving the '504 patent and no schedule has been set in any of these cases. The defendants in these other cases do not oppose this motion.

CBS and NBC are accused of infringing the '504 patents through use of "software" in connection with certain podcasts and episodic TV shows identified in the Complaints. *See* CBS and NBC First Amended Complaints at ¶¶ 10-11. With respect to CBS, Plaintiff identifies a single podcast managed by CBSSports.com (the "CBS Sports Podcast"), several podcasts managed by CBS Radio News (the "CBS News Podcasts"), and a single episodic TV show ("CSI: Crime Scene Investigation"). *See* Declaration of Dustin Gervais ("Gervais Decl.") at ¶ 5; and Declaration of Matt Norlander ("Norlander Decl.") at ¶ 4. With respect to NBC, Plaintiff identifies podcasts managed by NBC News Digital (the "NBC News Podcasts"), podcasts managed by CNBC Digital (the "CNBC Podcasts"), and a single episodic TV show ("Chicago Fire"). *See* Declaration of Edward J. McConville ("McConville Decl.") at ¶ 3; and Declaration of Scott Drake ("Drake Decl.") at ¶ 3.

Because the alleged infringement is based on the operation of software used in connection with podcasts and episodic TV shows, the individuals who are likely to have relevant knowledge include the persons involved in the design, development and/or operation of the accused software. As evidenced in the declarations submitted in support of this motion, the vast majority of the persons involved in the design, development, and/or operation of the accused software are located in or near the Southern District of New York. Additionally, many of these

persons are third-parties who were hired to design, develop, and/or operate the accused software. Accordingly, because these cases will involve defenses based on the non-infringement of the '504 patent, trial of these cases are likely to involve testimony from third-party and party witnesses located in or near the Southern District of New York.

### III. THE LAW GOVERNING TRANSFER

The venue transfer statute provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) gives courts the discretion, and in some cases the duty, to transfer an action to a forum if it is "clearly more convenient" than the venue chosen by the plaintiff. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying Fifth Circuit law); *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010) (granting transfer). Under Section 1404(a), a court may transfer an action to any district where it "might have been brought," where it is convenient for the parties and witnesses, and in the interests of justice. The party seeking transfer has the burden to show "good cause" for transfer. *Volkswagen*, 545 F.3d at 315; *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765 (E.D. Tex. 2009). As set forth below, the Fifth Circuit has adopted "the private and public interest factors" test to determine whether a movant has shown good cause. *See ATEN Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 123 (E.D. Tex. 2009). Where analysis of those factors shows that another venue is "clearly more convenient," cases in this district not only may, but should, be transferred. *See TS Tech*, 551 F.3d at 1319; *Volkswagen*, 545 F.3d at 315.

## IV. SUMMARY OF ARGUMENT

There can be no dispute that these actions might have been brought in the Southern District of New York and, therefore, this Court should—after consideration of the applicable private and public factors— transfer these actions if it determines that New York is "clearly more convenient." The most important factor here is the convenience of witnesses, particularly third parties. Defendants identify herein multiple third-party and party witnesses who are located in or near the Southern District of New York. The remaining private and public factors either favor transfer or are neutral between the two forums. None of the relevant factors weighs against transfer. Therefore, Defendants have met their burden of establishing under the applicable standards that the Southern District of New York is "clearly more convenient" for these actions and that the cases should be transferred.

## V. ARGUMENT

### A. The Southern District of New York is a Proper Venue for These Actions.

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen*, 545 F.3d at 315. Venue in patent infringement actions is governed by 28 U.S.C. § 1400(b), which provides that "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular established place of business." Both Defendants have their headquarters in the Southern District of New York. Since personal jurisdiction exists in the Southern District of New York, venue would be proper there as well. *See* 28 U.S.C. § 1391(c) (a corporation resides in any district where it is subject to personal jurisdiction "at the time the action is commenced"). Therefore, there is no question that these cases could properly have been brought in the Southern District of New York.

### B. The Private Interest Factors Clearly Favor Transfer to the Southern District of New York.

The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 312. All four of these factors weigh in favor of transfer.

#### 1. The first three private interest factors strongly favor transfer

The first three private interest factors all relate to the location of witnesses and documentary evidence. Because the bulk of witnesses (including third-party witnesses) and documentary evidence are located in and near New York City, while no witnesses or documents are located in this District, these factors strongly favor transfer.

##### a. Critical third-party and party witnesses are located in or near the Southern District of New York

Convenience and costs to witnesses, particularly third-party witnesses, are of particular importance in the transfer analysis. *See Volkswagen*, 545 F.3d at 317 ("Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community."); *On Semiconductor*, 2010 WL 3855520, at *5 ("All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial."); *U.S. Ethernet Innovations v. Acer, Inc.*, No. 6:09-cv-448-JDL, 2010 WL 2771842, at *9 (E.D. Tex. July 13, 2010) ("In assessing the convenience of all parties and witnesses, it is the convenience of non-party witnesses that is accorded greater weight."). Here, many party witnesses and multiple

important non-party witnesses work or reside in or near the Southern District of New York. No relevant witnesses work or reside in or near this District.

CBS Witnesses

The most significant third-party witnesses for CBS are clustered in a geographic region in and around the Southern District of New York. Specifically, third-party witness Harris Media, LLC ("Harris Media") is located in the Southern District of New York and has responsibility for managing the hosting and distribution of the CBS News Podcasts and the RSS feeds associated with the CBS News Podcasts. Gervais Decl. at ¶ 8. Additionally, the former CBS employees, Paul Bronshteyn and Jacques Dupoux, who designed and developed the accused software used by CBSSports.com to disseminate the CBS Sports Podcast, (Norlander Decl. at ¶¶ 6-7), work in the greater Philadelphia area and in Brooklyn, New York, respectively, and, based on publicly available white pages information, reside in Philadelphia, Pennsylvania and New York, New York, respectively. Declaration of Jennifer Maisel ("Maisel Decl.") at ¶¶ 6-7. Philadelphia is within 100 miles of the Southern District of New York. Maisel Decl. at ¶ 3.

These non-party technical witnesses may be critical to the trial of the action against CBS because it is through testimony from these third-party witnesses (along with documents and other evidence) that CBS would seek to establish its non-infringement defenses. For these third-party witnesses, appearing at trial in the Southern District of New York would be much more convenient than appearing in this District. Additionally, in the event that these former employees declined to appear voluntarily at trial, the Southern District of New York would have subpoena power over them, whereas this District would not. *See* Fed. R. Civ. P. 45(b)(2). Accordingly, if this case proceeds in the Eastern District of Texas rather than the Southern

District of New York, all of the identified third-party witnesses concerning the CBS products/services will be substantially inconvenienced by traveling to this District for trial.

The Southern District of New York is also more convenient for many CBS party witnesses who would be involved in this case. CBS, CBS Broadcasting Inc., and CBS News are all headquartered in New York City and have their principal places of business there. Gervais Decl. at ¶ 2. CBS has thousands of employees in New York City. Gervais Decl. at ¶ 2. The operation of the CBS News Podcasts is handled in New York City at the CBS Broadcast Center in conjunction with third-party contractor Harris Media. Gervais Decl. at ¶¶ 6-8. The operation of the CBS Sports Podcast is handled by a CBS podcasting host in Stamford, Connecticut, which is within 100 miles of the Southern District of New York. Norlander Decl. at ¶¶ 2-6; Maisel Decl. at ¶ 2. Therefore, witnesses as to the operation of the CBS News Podcasts and the CBS Sports Podcast are located in the Southern District of New York or its immediately surrounding area, and no such witnesses are located in this District. Gervais Decl. at ¶ 9; Norlander Decl. at ¶ 9.

<u>NBC Witnesses</u>

NBC is headquartered in the Southern District of New York and has hundreds of employees there. McConville Decl. at ¶ 2. Many of the NBC employees knowledgeable about the accused systems used by NBC are currently located in New York City, or will be relocating to New York City later this year. McConville Decl. at ¶¶ 4-8; Drake Decl. at ¶¶ 4-6.

Specifically, with respect to the NBC News Podcasts, Ted McConville created the software used by NBC to automate the creation and dissemination of the NBC News Podcasts and corresponding RSS feeds. McConville Decl. at ¶ 6. Mr. McConville currently resides in Redmond, Washington, but he travels to New York City extensively for business. Moreover, he

will be relocating to the New York City area by the end of this year. McConville Decl. at ¶ 7. Additionally, NBC News Digital personnel in the New York City area are likely to have technical, marketing, and/or sales information relating to the Podcasts. McConville Decl. at ¶ 5. These individuals include David Britt-Friedman, Stokes Young, and Eric Zuckerman. *Id.*

With respect to the CNBC Podcasts, the entire technical support team and all of the video editors responsible for the CNBC Podcasts work in Englewood Cliffs, New Jersey, which is a suburb of New York City that is less than 17 miles from the Southern District of New York. Drake Decl. at ¶ 5; Maisel Decl. at ¶ 4. Additionally, the principal technical, marketing, and sales documentation relating to the CNBC Podcasts is located primarily in Englewood Cliffs, New Jersey. Drake Decl. at ¶ 4.

Thus, the majority of potential third-party and party witnesses on technical subjects live in or near (within 100 miles of) the Southern District of New York.

### b. No relevant witnesses are located in the Eastern District of Texas

In these cases, ***none*** of Defendants' witnesses are based in the Eastern District of Texas, nor do NBC and CBS have any party or third-party witnesses situated in the Eastern District of Texas. Moreover, while Personal Audio, according to the Complaints, is a Texas limited liability company, Personal Audio conducts no business operations of any kind, but instead obtains its income solely through patent licensing.[3] The three inventors on the patent-in-suit live in New Hampshire, Florida, and Illinois, respectively. None live in the Eastern District of Texas. Significantly, the United States Court of Appeals for the Federal Circuit has, in the context of evaluating a transfer motion in the earlier *Apple* case, characterized Personal Audio's

---

[3] *See* Personal Audio's Website, http://personalaudio.net/, stating that "Personal Audio, LLC was founded to market the innovations described in the ['504 patent]."

connections with the Eastern District of Texas as "ephemeral." *In re Apple Inc.*, 2010 WL 1922942, at *1.[4]

Under these circumstances, transfer to the Southern District of New York is appropriate. *See, e.g.*, *U.S. Ethernet Innovations*, 2010 WL 2771842, at *9 (granting motion to transfer where "there are no non-party witnesses that reside in the Eastern District of Texas, yet there are potentially important non-party witnesses such as inventors, prior art witnesses, and the prosecuting attorney that would presumably experience more convenience and less expense if this case were tried in the [transferee forum]"); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (finding this factor to weigh substantially in favor of transfer "[b]ecause a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas").

### c. The Bulk of the Relevant documents are located in New York

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345 (citation omitted); *U.S. Ethernet Innovations*, 2010 WL 2771842, at *9. In the present action, that location is the Southern District of New York, because, as discussed above, not only are many relevant witnesses located in the Southern District of New York or nearby, but so are their documents. Documents relating to the CNBC Podcasts are situated in Englewood Cliffs, New Jersey, Drake Decl. at ¶ 4; documents relating to the NBC News Podcasts, including source code, are located in New York City, McConville Decl. at ¶ 9; and documents relating the CBS News Podcasts are located with

---

[4] Indeed, Personal Audio's connections with this District are so slight that its lead counsel is located in New York City and its Texas counsel is located in Dallas.

11

Harris Media, in addition to being located with CBS employees in New York, Gervais Decl. at ¶¶ 6,8.

By contrast, Defendants are not aware of *any* relevant documents kept in the Eastern District of Texas by Defendants or any third-party. Thus, Defendants and third-parties would face unnecessary burdens transporting their documents to the Eastern District of Texas. *See ATEN*, 261 F.R.D. at 124 ("[W]hether documents may be produced electronically is no longer relevant in the convenience analysis. Therefore, as the weight of physical and documentary evidence is located within California, this factor favors transfer.").

Although Personal Audio may have some relevant documents situated in this District, the bulk of the relevant documents will be produced by Defendants in New York. Consequently, this factor favors transfer to the Southern District of New York.

### 2. Other practical factors favor transfer to the Southern District of New York

The final private interest considerations are the practical factors relating to ease, expense, and expediency of trial. For the reasons discussed above, these favor transfer to New York; it will be more cost-effective, easier, and efficient to administer the case in the Southern District of New York because the substantial bulk of party witnesses and third-party witnesses are located in and around that district. Proceeding in Texas would have the opposite effect.

Transfer of these cases would not interfere with its speedy resolution. These cases are at an early stage — the parties have not yet had a scheduling conference or completed exchanging contentions, there has been no *Markman* briefing or hearing, and no discovery has been served or taken, and Defendants have timely moved for transfer.

### C. The Public Interest Factors Also Favor Transfer

The public interest factors are "(1) the administrative difficulties flowing from court

congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Fujitsu*, 639 F. Supp. 2d at 765.

### 1. Court congestion and administration are neutral towards transfer to the Southern District of New York

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. As this Court has previously noted, court congestion is the "most speculative factor" in the transfer analysis. *Vigilos, LLC v. Sling Media*, No. 2:11-CV-112-DF at *10 (E.D. Tex. July 25, 2011) (quoting *Genentech*, 566 F.3d at 1345). Court congestion statistics neither favor nor disfavor transfer to the Southern District of New York.[5]

Both the Southern District of New York and the Eastern District of Texas participate in the Patent Pilot Program, Public Law 111-349. The Southern District of New York began participating in the Patent Pilot Program on November 26, 2011. Maisel Decl. at ¶ 5. The Eastern District of Texas began participating in the Patent Pilot Program on September 19, 2011. Consequently, the availability of patent-specific procedures and case administration neither favors nor disfavors transfer.

For the above reasons, Defendants submit that court congestion and administration neither favors nor disfavors transfer to the Southern District of New York.

---

[5] According to the Federal Court Management Statistics, in the twelve month period ending September 30, 2011, the Eastern District of Texas saw a 6.4% increase in the number of filings, and the Southern District of New York saw a 6.9% increase. Additionally, the median time from filing to trial for civil actions in the twelve month period ending September 30, 2012 is 24.8 months for the Eastern District of Texas, and 27.2 months for the Southern District of New York. These statistics are provided by the Administrative Office of the U.S. Courts, and are available at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2012.aspx.

### 2.     The Southern District of New York has a local interest

"[T]his factor analyzes the factual connection that a case has with both the transferee and transferor venues.  Generally, local interests that could apply virtually to any judicial district or division in the United States are disregarded in favor of particularized local interests." *Fujitsu*, 639 F. Supp. 2d at 769.  Thus, the alleged infringement in the Eastern District of Texas cannot establish a local interest because those same acts also allegedly occur throughout the country. *See* First Amended Complaint at ¶ 9; *TS Tech*, 551 F.3d at 1321 (finding that where the allegedly infringing products are sold throughout the United States, "the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue").

New York has a particular interest in this dispute because it affects CBS's and NBC's operations there, and the development of CBS's and NBC's software accused of infringement has occurred there.  This factor accordingly weighs toward transfer.  *See Volkswagen*, 545 F.3d at 318 (holding that the local interest factor favors transfer to a venue where residents "have extensive connections with the events that give rise to the suit").

### 3.     Neither familiarity with the applicable law nor avoidance of conflicts favors either forum

The applicable law in this matter is federal patent law.  Neither forum has any advantage over the other in terms of knowledge of the applicable law.  This factor does not favor granting or denying transfer.  *See, e.g., Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.,* No. 2:09-cv-200-TJW, 2011 U.S. Dist. LEXIS 78312, at *12-13 (E.D. Tex. July 19, 2011) (no difference in ability of federal courts to handle patent actions).

Although Personal Audio has already litigated in this District, those lawsuits (which were before Judge Clark) do not weigh for or against transfer here because they were not litigated in the Marshall Division and they involved different parties, witnesses, and evidence concerning

two patents not at issue here – the '076 and '178 patents. As discussed above, the claims of the '076 and '178 patents are directed to technology separate and distinct from the technology to which claim 31 of the '504 patent is directed (claim 31 is the only specific claim Plaintiff has identified as being infringed). The claims of the '076 and '178 patents are directed to audio players (e.g., iPod-like devices) for *playing* audio content, whereas claim 31 of the '504 patent is directed to an apparatus for *disseminating* a series of episodes represented by media files via the Internet. Because a different technology is at issue here, the prior litigations favor neither granting nor denying transfer. *See In re Genentech*, 566 F.3d at 1346 (finding previous litigation is relevant in transfer analysis where the "previous lawsuit involved the same parties, evidence, and facts").

Moreover, even if Judge Clark had any familiarity with the subject matter of this case, that familiarity would be irrelevant because there is no judge in the Marshall Division with such familiarity. *See Rembrandt*, 2011 U.S. Dist. LEXIS 78312, at *6-7 (granting transfer of a case in which Judge Ward had completed claim construction because he and Magistrate Jude Everingham would be retired before the trial and thus "there will no longer be a judge in the Marshall Division with familiarity of [the] case.").

The avoidance of unnecessary problems of conflicts of laws is neutral here because no conflicts of laws issues are involved in these cases.

## VI.   CONCLUSION

Because the weight of the factors favors transfer, Defendants have shown good cause for transfer to the Southern District of New York. Accordingly, Defendants respectfully ask this Court to transfer these cases to the Southern District of New York for further proceedings.

Dated:  June 28, 2013	Respectfully Submitted,

*/s/ Steven Lieberman*
*(with permission by Jennifer P. Ainsworth)*
Steven Lieberman
slieberman@rfem.com
Brian Rosenbloom
brosenbloom@rfem.com
Jennifer Maisel
jmaisel@rfem.com
ROTHWELL, FIGG, ERNST & MANBECK, PC
607 14th St., N.W., Ste. 800
Washington, D.C.  20005
(202) 783-6040 (telephone)
(202) 783-6031 (facsimile)

Jennifer Parker Ainsworth
Texas State Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
One American Center
909 ESE Loop 323, Suite 400
Tyler, TX 75701
(903) 509-5000 (telephone)
(703) 509-5092 (facsimile)

*Attorneys for Defendants*
*CBS Corporation and NBCUniversal Media, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on this the 28th day of June, 2013.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth

**CERTIFICATE OF CONFERENCE**

On June 27, 2013, by telephone and e-mail Steven Lieberman and Brian Rosenbloom, Counsel for Defendants, discussed the requested relief with Papool Chaudhari, Counsel for Plaintiff.  After due consideration, Plaintiff is opposed to the relief requested herein. No agreement could be reached and discussions as to the requested transfer have ended in an impasse leaving an open issue for the Court to resolve.

*/s/ Steven Lieberman*
Steven Lieberman