IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC | § | |
| | § | |
| v. | § | Case No. 2:13-CV-270-JRG-RSP |
| | § | |
| CBS CORPORATION | § | |

## MEMORANDUM ORDER

Before the Court is CBS Corporation's ("CBS") Motion to Transfer Venue to the Southern District of New York (Dkt. 11, filed June 28, 2012).[1] CBS argues that the Southern District of New York is a clearly more convenient forum for this case. Plaintiff Personal Audio opposes transfer. After considering all of the record evidence and weighing the various factors, the Court finds that CBS has failed to carry its burden of showing that the Southern District of New York is a clearly more convenient venue for this case.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the

---

[1] The Court is aware that CBS has filed a petition with the Federal Circuit Court of Appeals, seeking a writ of mandamus regarding this Motion. Considering the apparently premature nature of the petition, the Court considers it advisable to proceed with its consideration of the Motion.

case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-

M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

## DISCUSSION

A. **Proper Venue**

Neither party disputes that venue is proper either in the Eastern District of Texas or the Southern District of New York as to Personal Audio and CBS.

B. **Private Interest Factors**

    1. **Cost of Attendance for Willing Witnesses**

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* Wright & Miller, *Federal Practice and Procedure* § 3851. "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

    **Defendant CBS's Witnesses**

CBS alleges that "CBS has thousands of employees in New York City." (Mot. at 9.) Of those thousands of employees, CBS identifies a single one in their brief – Dustin Gervais – as having "in-depth personal knowledge regarding the process CBS Radio News uses to distribute CBS News Podcasts." (Mot. at 2.) At the hearing on the Motion to Transfer, it became apparent to the Court that Mr. Gervais was simply relaying third-hand information he had gleaned from

conversations with a number of CBS employees that possessed *actual* knowledge about the technology at issue in the case – the most notable (and likely most relevant) person being Jason Randell, CBS.com's Vice President of Engineering, who is located in the Northern District of California (at the headquarters of CBS Interactive in San Francisco) along with, according to Mr. Gervais, the "majority" of technical employees.[2] (Hrg. Trans. at 72-73, 75-76.) As best the Court can discern (over CBS's obfuscation, which is discussed further below), CBS Interactive in San Francisco is the site of most of CBS's technical operations and development, and houses a substantial number of potentially relevant employees.

The only other employee identified in CBS's brief is Matt Norlander, who resides outside (but near) the Southern District of New York. Mr. Norlander is identified as having responsibility for the "production and distribution" of a single CBS Sports College Basketball Podcast, and the Motion describes him as a "host." (Mot. at 9.) At the hearing on the Motion to Transfer, Mr. Norlander stated that he was a "writer" for the podcast, and that as a part of his job as a writer, he would upload completed audio recordings to CBS's servers.[3] (*See, e.g.*, Hrg. Trans. at 37.) It appears that despite CBS's extensive reliance on his location in support of their venue motion, Mr. Norlander does not possess much, if any, knowledge as to how the CBS's software or systems work beyond his role as a user of those systems. Far more troubling, however, is what became apparent to the Court via the testimony provided at the hearing – Mr. Norlander was yet another declarant used by CBS whose declaration and testimony did not result from "personal knowledge," as claimed in his declaration. Instead, like Mr. Gervais, Mr.

---

[2] It does not appear that CBS identified Mr. Randell – or any of the other California technical employees – as potential witnesses to the Court in conjunction with the briefing on the Motion to Transfer.

[3] Mr. Norlander was the responsible "writer" for one of approximately 60 podcasts available through CBS Sports alone. It appears that some of those 60 podcasts may now be defunct, but it is unclear from the record how many. (*See* Hrg. Trans. at 62-63.)

Norlander's testimony was based almost entirely on conversations between Mr. Norlander and another CBS employee (located far from the Southern District of New York) with actual knowledge of the technology. During his examination, Mr. Norlander noted that almost every fact he swore to in his declaration was obtained from discussions with Adam Aizer, CBS Interactive's Coordinator of Digital Subscriptions and Programming. Mr. Norlander acknowledged that Mr. Aizer "probably has more relevant knowledge" than Mr. Norlander regarding this litigation. (Hrg. Trans. at 55.) Mr. Aizer is located in the Southern District of Florida, at the headquarters of CBS Sports.[4]

It is worth taking a moment here to note that the Court is gravely concerned about the representations made by CBS's declarants and counsel. It appears to this Court that CBS and its counsel participated in a concerted effort to channel information through otherwise ordinary employees who were located near CBS's desired venue, rather than identifying the witnesses who possessed *actual* knowledge of the technology at issue.[5] The Court stops short of finding an affirmative intent to deceive, but it is clear from the record that CBS intentionally omitted highly relevant information in its briefing when that information did not support transfer to the Southern District of New York.

At the hearing on the Motion to Transfer, CBS provided an additional witness as to the Showtime shows listed in Personal Audio's infringement contentions. Ms. Seana Baruth is the Vice-President of Product Management for Showtime Anytime. At the hearing, Ms. Baruth

---

[4] It does not appear that CBS identified Mr. Aizer as a potential witness to the Court in conjunction with the briefing on the Motion to Transfer.

[5] CBS and its counsel clearly had knowledge of the omitted (but highly relevant) witnesses, as at least one declarant (Dustin Gervais) testified at the hearing that he spoke with one of those witnesses (Ed Randell) – in the presence of counsel – in an effort to gather the facts eventually sworn to in his declaration. Mr. Gervais also testified that he agreed that Mr. Randell was more knowledgeable about the operation of the cbs.com website, and that outside of the instant litigation he would ordinarily have no reason to speak with Mr. Randell. (*See* Hrg. Trans. at p. 79 ln. 20 – p. 80 ln. 15.)

testified that she and her team members were the most knowledgeable CBS witnesses with regard to the Showtime Anytime website. Ms. Baruth's team is primarily based in New York, with additional team members located in Florida and Halifax, Nova Scotia. It appears that most of the substantive development of the Showtime Anytime video technology was performed by Brightcove, a third party developer (discussed further with regard to third party witnesses below), and that Ms. Baruth and her team's work appears to be targeted primarily toward the customization of the appearance of Showtime's video player. In Ms. Baruth's words: "one way we might customize it is that it has to look and feel like the showtimeanytime.com site so we implement changes to it so that it looks and feels and matches the site." (Hrg. Trans. at 19.) Thus, the information possessed by Ms. Baruth and her team with regard to customizing the CBS website likely has some relevance, but that relevance is mitigated by the fact that it appears to be far less important than the information possessed by third party developers who possess information about the actual design and operation of the accused functionality.

In their briefing and testimony presented at the hearing on the motion to transfer, CBS does not identify a single witness with knowledge as to the CBS.com video technologies accused in this case. As discussed further below, these technologies likely make up a substantial portion of this case. The Court presumes that Mr. Randell, as the Vice President of Engineering of CBS.com, likely possesses information about CBS.com's streaming video capability.

What is clear from the testimony provided at the hearing is that the most relevant CBS witnesses as to the technologies CBS identifies in its Motion to Transfer are located in the Northern District of California and the Southern District of Florida – both of which are substantially closer to the Eastern District of Texas than to the Southern District of New York.

**Plaintiff Personal Audio's Witnesses**

At the time of filing, Personal Audio's only full-time employee was Brad Liddle. Neither party appears to dispute the fact that Mr. Liddle possesses relevant knowledge as to the licensing practices of Personal Audio, and worked for Personal Audio as General Counsel in Houston at the time the lawsuit was filed.[6]

CBS spent a substantial portion of time, both in its briefing and at the hearing, probing the portion of Mr. Liddle's declaration pertaining to one of Personal Audio's Beaumont locations. Specifically, CBS takes issue with the following address given by Mr. Liddle: "3827 Phelan Blvd, **Suite** 180, Beaumont, TX, 77707." (*See, e.g.*, Dkt. 12-2 at par. 3.) CBS contends that the address should have read "3827 Phelan Blvd, **Box** 180, Beaumont, TX, 77707," because the location was actually a commercial mailbox. Personal Audio stipulates to this fact and readily admitted at the hearing that their characterization of the Phelan Boulevard address was incorrect, and that it does not dispute CBS's contention that the address should have referred to as a "box" instead of a "suite." The Court is not persuaded by Personal Audio's explanation of this "error" – which seems suspiciously strategic in nature – but observes that the Phelan Boulevard location, whether read as "box" or "suite," carries little weight in the §1404 analysis because no employees or documents exist at that location.[7] It stands uncontroverted in the record that, at the time of filing of the suit, Personal Audio's documents were located in Beaumont, which is in the Eastern District of Texas, and that Personal Audio's only full-time employee

---

[6] Although it does not affect our transfer analysis because it occurred after the time of filing, it is worth noting that Personal Audio now employs six people within the Eastern District of Texas – some of which may possess knowledge relevant to this suit.

[7] While CBS detailed its investigation of the Phelan Boulevard location in great detail, it was silent on any investigation of Personal Audio's Houston location or the small Beaumont location where documents were stored and Mr. Skaggs was deposed. (*See* Hrg. Trans. at p. 89, ln. 23 – p. 94, ln. 19.) It is unclear whether CBS chose not investigate those locations, or conducted some investigation and decided to not disclose the results in its briefing.

resided and worked in Houston, just outside the Eastern District of Texas. Indeed, this fact was clearly set out in the same affidavit that contained the reference to suite instead of box.

**Third Party Witnesses**

There exists very little – if any – admissible evidence in the record about the materiality and location of the third party witnesses relied upon by CBS in support of their Motion to Transfer.

CBS relied on two sets of alleged third party witnesses in its briefing. CBS's first claim is that two allegedly relevant potential witnesses, Paul Bronshteyn and Jacques Dupoux, reside near the Southern District of New York. In its briefing, CBS relied primarily on unauthenticated and unverified listings from "Whitepages.com", at least one of which was contradictory on its face. (*See, e.g.*, Dkt. 11-8 at 2, showing two different addresses for the same Paul Bronshteyn.) At the hearing on the Motion to Transfer, CBS abandoned its reliance on the Whitepages.com listings, but instead attempted to solicit testimony from Mr. Norlander about the location of Mr. Bronshteyn's and Mr. Dupoux's prior positions at CBS and current residences. Mr. Norlander's testimony was founded on two bases. First, Mr. Norlander's knowledge about Mr. Bronshteyn's and Mr. Dupoux's alleged former positions and responsibilities at CBS was founded exclusively on information he was "told" by another CBS employee (whom CBS did not disclose to the Court in conjunction with briefing on the Motion to Transfer):

> Q. Do you have an understanding as to how the software tool that is used by CBS Sports for its podcasts was developed?
> A. Yes, a general understanding.
> Q. And what is that understanding?
> A. The understanding is that it was developed by two men, two former employees at CBSSports.com who are no longer there.
> Q. And did you -- do you have an understanding as to who specifically those former CBS employees are who worked on this particular software tool?
> A. Yes. Jacques Dupoux and Paul Bronshteyn.

> Q. And how did you attain that understanding as to the two former employees who worked on this podcasting tool used by CBS Sports?
> A. I was informed of this by my colleague at CBSSports.com, Adam Aizer, who is basically the connection between those men and me and that -- Adam was the one who also informed me and taught me how to use the tool.

(Hrg. Trans. at 42-43.) Thus, Mr. Norlander's testimony regarding Mr. Bronshteyn's and Mr. Dupoux's alleged role in developing the CBS podcasting upload tool was based solely on hearsay and is therefore inadmissible.

Mr. Norlander also testified that his knowledge as to Mr. Bronshteyn's and Mr. Dupoux's location was based on the location listed in their LinkedIn profile. After being faced with an objection, counsel for CBS attempted to lay a foundation for the exception set forth in Federal Rule of Evidence 803(17). This exception provides for the potential admission of "[m]arket quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations." *See* FRE 803(17). As a foundation, CBS relies on Mr. Norlander's testimony that, in his position as a journalist, his typical practice was "to use various online resources to locate individuals." (Hrg. Trans. at 47.) The Court sustained the objection to this testimony at the hearing, and reiterates that ruling here. This is clearly not the type of evidence contemplated by FRE 803(17). Under CBS's interpretation of this exception, any online information is necessarily admissible if a journalist testifies that he or she uses that resource to gather information. The Court finds that the LinkedIn profile relied upon by CBS is simply not reliable enough to satisfy this exception, especially given the fact that CBS could have easily provided verifiable, admissible evidence as to the facts upon which they attempt to rely. As *Weinstein's Federal Evidence* tells us:

> As with other hearsay exceptions, the admissibility of market reports and commercial publications under Rule 803(17) is

- 9 -

> predicated on the two factors of necessity and reliability. <u>Necessity lies in the fact that if this evidence is to be obtained it must come from the compilation</u>, since the task of finding every person who had a hand in making the report or list would be impossible. <u>Reliability is assured because the compilers know that their work will be consulted</u>; if it is inaccurate, the public or the trade will cease consulting their product.

5 *Weinstein's Federal Evidence* § 803.19[1] (Matthew Bender 2002) (emphasis added). Neither reliability nor necessity is present here. Notably, CBS did not contend that LinkedIn (which would presumably be the "compiler" under CBS's argument), makes any effort to verify the accuracy of the information contained in its profiles. The failure of necessity is even clearer: the Court finds that CBS could have easily provided testimony or an affidavit of a person with actual knowledge (e.g. Mr. Aizer),[8] or – since they claim to know their location – attempt to obtain an affidavit from Mr. Bronshteyn and Mr. Dupoux.

The second alleged third party 'witness' is Harris Media, which "host[s], manage[s], and distribute[s] the CBS News Podcasts as well as the RSS feeds associated with the CBS Radio News Podcasts." It is not clear what – if any – relevant information Harris Media might possess regarding the technical aspects of the accused systems.[9] Notably, CBS did not identify a single Harris Media witness in conjunction with its disclosure of potential witnesses in this case. (*See* "CBS Corporation's Initial Disclosures Pursuant to Paragraph 1 of the Discovery Order," Hrg. Ex. P-1.)

---

[8] As noted above, CBS's failure to disclose Mr. Aizer (who they now allege possesses personal knowledge of Mr. Bronshteyn and Mr. Dupoux's whereabouts) to the Court in conjunction with its transfer briefing appears to be motivated solely by the fact that Mr. Aizer's location does not support its request to transfer to New York. Thus, the blame for the lack of admissible evidence as to these topics falls squarely on the shoulders of CBS and its counsel.

[9] CBS did not rely on Harris Media at the hearing on the Motion to Transfer, and its own witness downplayed the importance of "content distribution networks." (Hrg. Trans. at 19-20.)

At the hearing on the Motion to Transfer, CBS attempted to remedy the lack of evidence as to potential third-party witnesses with Ms. Baruth's testimony that Showtime utilizes the services of Brightcove Inc., a company headquartered in Boston, Massachusetts. Ms. Baruth testified that "[she] believe[d]" that the representatives that she "deal[s] with from Brightcove" were located in Boston, but the record contains no evidence to support this belief. (Hrg. Trans. at 19.) It was developed on cross examination that the "account rep" to which Ms. Baruth referred is named Pablo Silva.[10] (*Id.* at 30-31.) Ms. Baruth did not know, and it is unclear from the rest of the record, where the employees that actually develop and maintain the Brightcove software (and presumably possess information relevant to the case) are located.[11]

Finally, the Court observes a curious lack of information regarding the accused CBS video products. CBS provided a great deal of argument and testimony about the accused podcast and Showtime video functionality, but was silent as to the accused CBS video functionality (which is presumably highly relevant in this case). The Court is concerned that given CBS's apparent pattern of intentionally omitting highly relevant information and channeling the information it does provide through its desired locale, the lack of information about the CBS video products might be intentional. In conjunction with its research into NBC's Motion to Transfer Venue (handled by the Court in a separate order), the Court learned of an online video solution called "thePlatform." (*See, e.g.*, Hrg. Trans. at 152.) CBS did not mention thePlatform in its briefing or testimony, but it appears that thePlatform may "manage[] tens of millions of

---

[10] If the Court *were* to allow the use of LinkedIn profiles as admissible evidence as CBS suggests, that website (as of 3/13/14) would show that Ms. Baruth may be incorrect in her belief regarding the location of CBS's Brightcove account representative – the Pablo Silva employed by Brightcove appears to be located in Miami, Florida – substantially closer to the Eastern District of Texas than the Southern District of New York. (http://www.linkedin.com/in/pablosilva)

[11] In addition to Boston, Brightcove also has US locations in Tempe, AZ; San Francisco, CA; New York, NY; and Seattle, WA; as well as a substantial number of international offices.

video[] views every month for CBS.com, CBSSports.com and the CBS Audience Network, the largest network of professional, premium video content online, which includes content from CNET, CBSNews.com, Gamespot, and more." ("CBSi Case Study," the Platform.)[12] Testimony was provided by an unrelated NBC witness that thePlatform is located in Seattle, WA. While not dispositive, this is yet another piece of information that suggests that CBS may have omitted information crucial to the Court's §1404 analysis.

After considering all the evidence relevant to the convenience factor, the Court observes that the majority of key CBS party witnesses are located closer to the Eastern District of Texas than to the Southern District of New York. Personal Audio's only party witness is located closer to the Eastern District of Texas than to the Southern District of New York. The record is unclear as to potential third party witnesses: it appears likely that some are located closer to the Southern District of New York and some are located closer to the Eastern District of Texas. Accordingly, CBS has failed to show that this factor favors transfer, and the Court finds that this factor favors the Eastern District of Texas.

### 2. Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

The briefing submitted by CBS on this point is scant. Dustin Gervais stated in his declaration that "CBS Radio News' principal technical marketing, sales documentation and personnel relating to the CBS News Podcasts are located in New York." (Dkt. 11-11 at par. 6.)

---

[12] The Case Study in question can be found at http://theplatform.com/cbsi_case_study/, last accessed 3/13/14.

A casual reading of this statement suggests more than is actually true. When carefully parsed, Mr. Gervais does not actually say that CBS Radio News *has* relevant documents or employees in New York, just that any that might exist are located there. Indeed, as noted above, this statement turned out to be misleading – although some statistical and financial records appear to exist in New York and New Jersey, it appears that the "majority" of CBS Interactive technical employees who might actually have technical information relevant to development and operation the accused systems are located in California (including the Vice President of Engineering, who Mr. Gervais consulted in preparation of his declaration). (Hrg. Trans. at 72-73, 75-76, 68-69.) The Court is generally loathe to make this type of overly technical reading into the statements of a declarant, but it is necessitated here by CBS's clear and repeated attempts to use artful wording to avoid disclosing the actual location of relevant documents and witnesses. Mr. Gervais also mentions Harris Media, which appears to have minimal relevance for the reasons set forth in Section 1 above. The Court finds that there are likely documents relevant to this case at the headquarters of CBS Interactive in the Northern District of California, given that it houses the majority of relevant technical employees.

At the hearing, Ms. Baruth testified that the documents "related to the technology used at Showtime to make TV espisodes available online at showtimeanytime.com" were located "in our wiki" and "ticketing system."[13] (Hrg. Trans. at 21.) The Court finds that these documents appear to have some relevance, but short of saying that these documents are routinely accessed from New York, Florida, and Nova Scotia, neither party introduced any evidence indicating where the electronic documents are actually hosted – it seems likely that they may be hosted with

---

[13] Ms. Baruth also mentioned that some documents might be stored on hard drives and printed, but it appears that the documents contained in the "wiki" and "ticketing system" are the most relevant given her team's heavy reliance on those systems.

the rest of the Showtime Anytime website in Florida, but it is also possible that the documents reside with Showtime's customization source code "on development machines in New York." (Hrg. Trans. at 18.)  Ms. Baruth also stated that "the customized source code lives in our source code depository."  (*Id*. at 30.)  It is not clear from the record whether the source code depository is also located on the New York development machines. When asked where the original source code was located, Ms. Baruth stated "I don't have access to Brightcove's operations; so, I don't know."  (*Id*.)  Although Ms. Baruth's testimony was uncertain on a number of points, what is clear from the record is that "the Web site is hosted on servers in Florida" before being distributed to content delivery networks, so a complete copy of the source code that is presented to users is located in Florida.  (*Id*.)

Mr. Norlander's declaration stated "I am not aware of any documents relating to the CBS Sports Podcast."  (Dkt. 11-12 at 2.)   The Court finally notes that CBS did not introduce any evidence as to where any documents are located for the CBS video products.  It seems likely – though not certain – that some documents related to these products likely exist at the headquarters of CBS Interactive in California, given that that location houses the "majority" of the technical employees, including the Vice President of Engineering for CBS.com.  (*See, e.g*., Hrg. Trans. at 72-73, 75-76, 68-69.)

Finally, it is undisputed that Personal Audio's relevant documents are housed within this district, and have been for nearly four years before the above-captioned suit was filed.  (Mot. at 12; Hrg. Trans. at 92-94.)

The Court observes that the majority of the most relevant documents in this case – at least the ones as to which CBS chose to provide information – are likely located in California and Florida, which are both substantially closer to the Eastern District of Texas than to the Southern

the rest of the Showtime Anytime website in Florida, but it is also possible that the documents reside with Showtime's customization source code "on development machines in New York." (Hrg. Trans. at 18.)  Ms. Baruth also stated that "the customized source code lives in our source code depository."  (*Id*. at 30.)  It is not clear from the record whether the source code depository is also located on the New York development machines. When asked where the original source code was located, Ms. Baruth stated "I don't have access to Brightcove's operations; so, I don't know."  (*Id*.)  Although Ms. Baruth's testimony was uncertain on a number of points, what is clear from the record is that "the Web site is hosted on servers in Florida" before being distributed to content delivery networks, so a complete copy of the source code that is presented to users is located in Florida.  (*Id*.)

Mr. Norlander's declaration stated "I am not aware of any documents relating to the CBS Sports Podcast."  (Dkt. 11-12 at 2.)   The Court finally notes that CBS did not introduce any evidence as to where any documents are located for the CBS video products.  It seems likely – though not certain – that some documents related to these products likely exist at the headquarters of CBS Interactive in California, given that that location houses the "majority" of the technical employees, including the Vice President of Engineering for CBS.com.  (*See, e.g*., Hrg. Trans. at 72-73, 75-76, 68-69.)

Finally, it is undisputed that Personal Audio's relevant documents are housed within this district, and have been for nearly four years before the above-captioned suit was filed.  (Mot. at 12; Hrg. Trans. at 92-94.)

The Court observes that the majority of the most relevant documents in this case – at least the ones as to which CBS chose to provide information – are likely located in California and Florida, which are both substantially closer to the Eastern District of Texas than to the Southern

District of New York. Although some printed documents may reside in Texas and New York, it appears that those documents have marginal relevance as they are either copies of documents that primarily reside elsewhere (*e.g.* depository copy of the live Showtime Anytime code in Florida; printed copies of wiki and ticketing system that resides in unidentified location) or carry less relevance than the technical documents (*e.g.* Personal Audio's documents; CBS's statistical reports regarding the number of CBS website hits). Accordingly, CBS has failed to show that this factor favors transfer, and the Court finds that this factor favors the Eastern District of Texas.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

The most relevant CBS technical witnesses in this case appear to be located in Florida and California – outside the subpoena power of both this Court and the Southern District of New York. The New York area witnesses identified by CBS (aside from Ms. Baruth) appear to be marginally relevant only because of CBS's clear attempt to channel information through them for the purposes of manipulating venue (discussed further in Section 1 above). Ms. Baruth, on the other hand, appears to possess some relevant information (although the information possessed by the unidentified Brightcove developers is likely to be substantially more important) and is under the subpoena power of the Southern District of New York. The only admissible evidence as to third party witnesses pertains to Brightcove, but it is not clear where the Brightcove technical employees are housed (also discussed in more detail in Section 1 above).[14] Finally, this Court holds subpoena power over Brad Liddle, who was the only full-time employee

---

[14] Even if the Brightcove employees with relevant knowledge were located in Boston (a proposition for which there is no factual support in the record), they would reside outside the subpoena power of both Courts at issue.

of Personal Audio at the time the suit was filed.[15]  Neither Court at issue here carries subpoena power over the most relevant witnesses in the case, but each holds subpoena power over some number of less important witnesses.  Accordingly, CBS has failed to show that this factor favors transfer, and the Court finds that this factor is neutral.

> 4. **All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive**

In its opening brief, CBS did not address the judicial economy impact of transferring only two cases outside of this District, essentially creating parallel proceedings.  When faced with this concern from Personal Audio, CBS argues that all the copending actions be transferred to the Southern District of New York.  (Dkt. 22 at 4.)  In support of this suggestion, CBS provides declarations from defendants HowStuffWorks.com and Togi Entertainment, and an email from defendant Lotzi Digital, stating that those defendants consent to transfer.  (*See* Dkts. 22-1; 22-2; 22-3.)  It is unclear how CBS proposes that this Court justify transfering all copending actions to the Southern District of New York simply by the consent of only one party at issue, without performing the requisite convenience analysis.  This proposal flies in the face of the statutory requirements imposed on this Court by §1404 and is not well taken.

In any event, the Court will address each declaration referred to by CBS in turn.  The first declaration attached is from Jason Lo, counsel for HowStuffWorks.com.  Mr. Lo "consents to a transfer of venue to the Southern District of New York" but also states that "the Northern District of Georgia is the most convenient forum for HowStuffWorks.com."  (Dkt. 22-1 at 2.)  HowStuffWorks.com has since moved to transfer to the Northern District of Georgia, or in the alternative, to the Southern District of New York.  The next declaration is from Steven Brewer,

---

[15] The Court also holds subpoena power over the six employees of Personal Audio who work within the Eastern District, but does not rely on this in its analysis because those employees were hired after the instant suit was filed.

the (now former) President and CEO for Togi Entertainment, which states that "the SDNY is a more convenient venue for Togi than the Eastern District of Texas" and that "Togi intends to move to transfer to transfer venue to the SDNY." (Dkt. 22-2 at 1-2.) In fact, Togi did not move to transfer, and it is not clear that venue would even be proper for the Togi action in the Southern District of New York. Finally, CBS cites to its own declaration attaching an e-mail from John Jackson, counsel for Lotzi Digital, stating that Lotzi "consents to transfer to the Southern District of New York." (Dkt. 22-3; 22-4.) Lotzi has not moved to transfer.

As noted above, CBS has provided absolutely no facts as to the other defendants, no legal analysis as to the appropriateness of transfer for these parties under §1404, and cites no authority for its suggestion that a transfer without an analysis of the relevant facts would be appropriate here.

It is in the interest of judicial economy to have one court decide all related patent issues. *In re Volkwagen of America, Inc*., 566 F.3d 1349, 1351 (Fed. Cir. 2009). CBS characterizes Personal Audio's position as contending "that a single private interest factor – judicial economy – overrides all others." (Dkt. 22 at 2.) Personal Audio does not appear to have actually made that argument, and this Court certainly does not endorse such a proposition. Rather, as is well-established, judicial economy is one factor in the transfer analysis. Here, CBS has failed to show that this factor favors transfer, and the Court finds that this factor disfavors transfer.

**C.  Public Interest Factors**

    **1.  Local Interest in Having Localized Interests Decided at Home**

CBS argues that "New York has a particular interest in this dispute because it affects CBS's … operations there, and the development of CBS's … software accused of infringement has occurred there." (Mot. at 14.) The Court addresses each of these arguments in turn.

The Court notes that the first connection alleged by CBS is not a connection to "the events that gave rise to this suit," as suggested by *In re Volkswagen II*, but rather arises from the fact that some residents of the Southern District of New York may have an interest, financial or otherwise, in CBS itself – a theory which raises troubling fairness implications. 545 F.3d at 318. If the Court endorsed this view, Personal Audio could make a similar argument that Texas has a localized interest in Personal Audio given its payment of Texas Franchise Taxes. (Dkt. 12-2 at 1-2.) However, the Court affords this line of argument no weight.

CBS's second connection appears, on its face, to be more substantive. The Court agrees that if the development of the CBS software accused of infringement took place in New York, that district would have some particularized local interest in this case. But there is virtually nothing in the record that suggests this is the case. In fact, as noted in great detail above, it appears that very little substantive development took place in the Southern District of New York, but instead in California and Florida by CBS, and various other (as yet unknown) locations by third parties. Accordingly, CBS has failed to show that this factor favors transfer, and the Court finds that this factor is neutral.

### 2. Familiarity of the Forum With the Law that Will Govern the Case, Administrative Difficulties Flowing From Court Congestion, and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The Court finds that the remaining public interest factors are neutral, but notes that the median time to trial for a civil case is nearly 8.5 months longer in the Southern District of New York than in the Eastern District of Texas. (*See* September 2013 National Judicial Caseload Profiles for District Courts, http://www.uscourts.gov.)

## CONCLUSION

After considering all of the relevant evidence and factors, the Court finds that CBS has failed to meet its burden of showing that the transferee venue is "clearly more convenient" than the transferor venue. Accordingly, the Motion is **DENIED**.

**SIGNED this 20th day of March, 2014.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE