## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

PERSONAL AUDIO, LLC,

        Plaintiff,

     v.

CBS CORPORATION,

        Defendant.

Case No. 2:13-cv-270-JRG

JURY TRIAL DEMANDED

## PLAINTIFF PERSONAL AUDIO, LLC'S
## MOTIONS FOR JUDGMENT AS A MATTER OF LAW

## I.  INTRODUCTION

Plaintiff Personal Audio, LLC ("Personal Audio") submits the following motions for judgment as a matter of law (1) that Klemets does not invalidate the '504 Patent because no evidence was presented to the jury; (2) that CBS's invalidity claims because they are based on references that were not publicly available; (3) that the '504 Patent is valid pursuant to 35 U.S.C. §§ 102 or 103; (4) that the permitted multi-reference obviousness prior art combinations do not render the '504 Patent invalid; (5) that CBS's apparatus infringes the '504 Patent pursuant to 35 U.S.C. § 271; and (6) that CBS failed to provide any evidence that the '504 Patent is invalid due to 35 U.S.C. § 101.

Rule 50 of the Federal Rules of Civil Procedure authorizes the Court to enter judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "A judgment as a matter of law is appropriate if the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable people could not arrive at a verdict to the contrary." *Buchanan v. City of San Antonio*, 85 F.3d 196, 198 (5th Cir. 1996). "A motion for a directed verdict … under [Rule 50] raises a question of law only: Whether there is any evidence which, if believed, would authorize a verdict against movant." *Marsh v. Illinois Cent. R. Co.*, 175 F.2d 498, 500 (5th Cir. 1949).

## II.  NO REASONABLE JUROR COULD FIND THAT THE KLEMETS PRIOR ART WOULD RENDER ANY CLAIM OF THE '504 PATENT ANTICIPATED OR OBVIOUS, AS NO EVIDENCE ON THIS REFERENCE WAS PRESENTED TO THE JURY

No reasonable juror could find that Klemets either anticipates or renders obvious the asserted claims of the '504 Patent.  During its opening statement, Defendant CBS published the Klemets reference on a demonstrative as one of six prior art references that it will present to the jury as to why the asserted '504 Patent is invalid.  (Trial Tr. 9/8/14 Afternoon, 37:19-25

1

(timeline showing Klemets as invalidating reference)).  CBS made no further mention of this reference during its opening statement.  (Trial Tr. 9//8/14 Afternoon, 37:8-53:16.)   CBS presented no evidence at trial concerning Klemets, as Dr. Porter did not rely on Klemets at trial as a basis for his invalidity opinions.  CBS acknowledged during the trial that it had dropped the Klemets reference as invalidating prior art for the jury to consider.  During the trial, CBS's counsel stated that "now, in the interest of time, Your Honor, we're going to be skipping the Klemets reference, which hasn't really been discussed in this trial, and we're going to move on to the issue of non-infringement with the Court's permission."  (Trial Tr. 9/10/2014 Afternoon, 128:16-20).  Given CBS's own admission that Klemets has been dropped from this case, to not preclude the jury from considering this prior art reference published to the jury, would otherwise invite the jury to commit error.  As such, Personal Audio's JMOL motion on this prior art reference should be granted.

III.    **NO REASONABLE JUROR COULD FIND THAT CBS HAS MET ITS BURDEN TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CLAIMS OF THE '504 PATENT ARE ANTICIPATED**

   A.  **CBS Has Failed to Offer Clear and Convincing Evidence that Many Of Its Prior Art References were Publicly Available Prior to May 29, 1996**

CBS has failed to offer clear and convincing evidence that key prior art references were publicly available prior to May 29, 1996.  Nor has CBS shown by clear and convincing evidence that the prior art references were in public use prior to May 29, 1996.  The elements of the apparatus claims claimed in the '504 Patent were never publicly available through any of the alleged prior art references before to the critical date and therefore these asserted references cannot be prior art as a matter of law.  For example, how the back end (or server side) of the apparatus works can vary depending on the how the system is set-up.  (Trial Tr., 9/10/2014

Afternoon, 152:11-153:1.)  Also, websites can be changed at any time and thus, having a screen shots of the prior art only after the critical date is not helpful.  (Trial Tr., 9/11/2014 Morning, 8:11-9:10.)

Sections 102(a) and 102(b) of the Patent Act require CBS to prove that a reference at issue was in "public use" or "known or used by others" in the United States.  *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998); *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1569 (Fed. Cir. 1997) ("If a device was 'known or used by others' in this country before the date of invention or if it was in 'public use' in this country more than one year before the date of application, it qualifies as prior art.") (citing 35 U.S.C. § 102(a) and (b) (1994)).

Although § 102(a) reads "known or used by others," the statute requires public knowledge or public use.  *Woodland Trust* at 1369 ("the § 102(a) language 'known or used by others in this country' means knowledge or use which is accessible to the public").  "[W]hen an asserted prior use is not that of the applicant, § 102(b) is not a bar when the prior use or knowledge is not available to the public."  *Woodland Trust* at 1370, *citing W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983) (holding that "third party secret commercial activity, more than a year before the patent application of another, is not a § 102(b) bar").  "But [] in the case of third party uses, being 'accessible to the public' still requires public availability; *secret or confidential third-party uses do not invalidate later filed patents*." *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013) (emphasis added).

A patent may be held invalid only if the invention was previously invented by another and was not abandoned, suppressed *or* concealed. 35 U.S.C. § 102(g) (emphasis added). CBS has failed to meet its burden to show a lack of such secrecy by clear and convincing evidence.

3

The specifics on each of the references not publicly disclosed prior to May 26, 1996 is as follows:

### (1)    Compton

The Compton reference mentions proprietary source code (not publicly available) that is necessary to understand how the apparatus claimed in the '504 Patent works.   Dr. Porter confirmed that he did not know whether the code for the "contents.c" and the "guide.c" was publicly available prior to 1997.  (Trial Tr. 9/11/2014 Morning, 24:9-12.)   Specifically, the Compton reference identifies a "contents.c" source code.  Without the "contents.c code," the Compton reference is not enabling.  (Trial Tr. 9/11/14 Afternoon, 66:15-67:3.)   Without the ability to publicly access the source code, one of ordinary skill in the art would not have the necessary details, lacking in the article, on how the system operates.  (*Id.*, 68:7-13.)

### (2)    NRL

Similar to the Compton reference, the NRL website and the components necessary to determine whether it would invalidate the '504 Patent were not publicly available.  Specifically, the Mr. Fenner's webpage was only available on a military website and there are questions about whether it was publicly available.  Further, the website itself does not demonstrate that it was updated from time to time, as new episodes became available.   In fact, CBS had to file a Freedom of Information Act (FOIA) request in order to obtain copies of portions of the code. (Trial Tr. 9/9/2014, 72:11-19.)  Mr. Fenner admitted that neither the code nor the logs that were discussed would have been available on his website.  (*Id.*)  This code and the other documents obtained through the FOIA request would not have been publicly available and thus, this reference is insufficient to invalidate the '504 Patent.

### (3)    Surfpunk /NCSA website

4

The Surfpunk prior art was essentially an email distribution chain.  Even Dr. Porter admits that "a person would have to do some work to identify the particular issue of the Surfpunk reference."  (Trial Tr. 9/11/2014 Morning, 16:13-16).  One could only obtain Surfpunk from an FTP server run by the editor of the email distribution and there is no proof that the particular relevant "issue" of Surfpunk could have been found by one of skill in the art who wanted to find the reference.  As such, it was not publically disseminated.  In fact, Dr. Porter did not know how the FTP search engines operated prior to 1997.  *Id.* at 16:3-9.  Further, the screen shot that CBS uses to show the "series of episodes" is from 1999.  DXT-CBS0056.

### (4)  RealAudio Websites

Similar to the points made above, the back end architecture was not publicly available. (Trial Tr. 9/11/2014 Morning, 19:11-16).

### B.  CBS's Claimed Prior Art References Also Are Missing Elements from the '504 Patent

In addition to not being publicly available, each of the prior art references also do not disclose elements from the '504 Patent.

### (1)  Compton

Rather than deal with the asserted claims, on an element by element basis, CBS categorized the elements of claim 31 into three groups.  (Trial Tr. 9/10/14 Afternoon, 118:13-14). Consistent with its strategy, CBS pointed to presence of media files, compilation files, data storage servers with processors – based on Figures 3 and 4 of the article, and that there were communication interfaces, that group 1 claim requirements were met.  (Trial Tr. 9/10/14 Afternoon, 117:6-118:6.)  CBS did not explain how these elements met the requirements of the asserted claims. For the second group of claim elements – Dr. Porter explained that url links were predetermined and used for the purposes of allowing users to view content. (Trial Tr.

9/10/14 Afternoon, 119:1-15.).  CBS argues the daily generation of a new url, and new media file constitutes updating the compilation file, and that the media (segments of a show) meet the episode limitation of the asserted claims.

Personal Audio's expert witness, Dr. Almeroth provided detailed testimony why the Compton reference fails to meet the clear and convincing evidence standard for invaldity.  First the Compton reference identifies a contents.c source code- which is proprietary and not available to the public.  Without the contents.c code, the Compton reference is not enabling.  (Trial Tr. 9/11/14 Afternoon, 66:15-67:3.)  The source code would provide the details, lacking in the article, on how the system operates.  (*Id.*, 68:7-13.)

With respect to the predetermined URL requirement of claim 31 – Dr. Almeroth explained that what is pointed by CBS as a compilation file is in fact not a compilation file. (Trial Tr. 9/11/14 Afternoon, 68:20- 69:1.)  The Compton reference creates a new file every night at a new url.  As such, there is not an updated version of a compilation file at a predetermined url, as required by claim 31.  (Trial Tr. 9/11/14 Afternoon, 69:1-13.).

The CNN show does not meet the "episodes" limitations as the content placed on the urls are segments of a show.  (Trial Tr. 9/11/14 Afternoon, 70:1-14; *see also* DTX-CBS0003). These segments are divisions of a program, and not a series of episodes.  Clips are not programs that form series.  (Trial Tr. 9/11/14 Afternoon, 71:1-4.).  Moreover, the clips are not a "group" or connected in any way.

Claim 32 is valid for the same reason claim 31 from which it depends upon, is not anticipated. Claim 33 depends on claim 1, for at least the reasons claim 31 is not anticipated, so is claim 33.  Similarly, claim 34 which depends on claim 33 is not anticipated as well.

### (2)    NRL

Fenner's Geek of the Week Web Page as it existed before the priority date does not anticipate any of the asserted claims by clear and convincing evidence.

- **Web logs (DX-189) –** The server web logs indicate that the website was accessed in 1993. (Trial Tr. 9/10/14 Afternoon, 58:21-59:3.) The logs provide no other information about how the website operated, what functions the website had, and how the website looked like for example. (Trial Tr. 9/11/14 Afternoon, 21:2-13.)

- **1994 screen capture from World Wide Web Unleashed (DX-188).** CBS uses this screen capture to show that there was a Geek of the week web page in 1994. But again, the screen capture provides no information on how the website operated, nor what functions/features it had. Screen captures do not enable one of ordinary skill in the art to understand the configuration or technical implementation of the web page. This also doesn't show the right page. (Trial Tr. 9/11/14 Afternoon, 30:14-20 ("It isn't just a matter of having a web page and knowing that there's a web server that all three of those limitations are met. A person of skill in the art in 1996, looking at the web page, would not be able to determine that there were processors - - excuse me – or data storage servers or necessarily that there were --- that was a communication interface."))

- **July 1995, 1994 screen capture of the Geek of the Week page.** Dr. Porter testified that this screen shot showed that Steve Crocker was on the Geek of the Week show. Dr. Porter presented no testimony on: how the 1994 website operated, what was the source code for that website, or what were the functions/features of the website. (Trial Tr. 9/11/14 Afternoon, 22:22-23:13.) The book does not describe any detail of the Fenner website including whether there were any data storage servers, processors, or communication interfaces and how they were configured to operate. (*Id.*)

- **DX-156.** The snapshot relied that CBS relied upon was not a snapshot of a 1994 page, but a snapshot of the web page that was taken from an archive, and the archive made a copy of the page in 1999. More importantly, this document shows that the web page was altered saying the "overviews are still online, but the audio files are not available." (Almeroth Testimony, 9/11/14 Afternoon Tr., 19:7-20.) In other words, changes were made to the website.

One of ordinary skill in the art viewing to the alleged Fenner web page, would not have any information on how the website operated – those details were not publicly available one of ordinary skill in the art. (Trial Tr. 9/11/14 Afternoon, 24:1-23.). The screen captures only show how the website looked like. Without vital information about how the alleged Fenner website operated, one of the ordinary skill in the art would not have been able to determine how Fenner made the website work the way it did. (*Id.* at 25:10-15.)

The testimony presented at trial fails to establish how the Geek of the Week operated before the priority date. While elements of Claim 31 were discussed by Dr. Porter, the following issues exist in stating that the NRL website disclosed all the elements:

- "media files" (9/10/14 Afternoon Tr., 64:1-8) but failed to explain how the media files meet any of the claim limitations

- "data storage servers" (*Id.* at 64) but did not explain how it data storage requirements of the asserted claims;

- "storing an updated version of a compilation file" – Dr. Porter testified that the Fenner script would download new files and update the webpage with the new show additions. (9/10/14 Afternoon Tr., 70:1-17.) One of ordinary skill in the art would not have

benefitted from knowing that the Fenner page was updated for the '504 patent because it would not tell them how the web page was updated.  (9/11/14 Afternoon Tr., 31:13-19.)

Further, elements from the dependent claims 32-34 also are not disclosed.  For example, Dr. Almeroth testified that the Sun .au file may or may not be compressed, meaning compression was not an emphasized or required feature of the Fenner page.  (9/11/14 Afternoon Tr., 32:1-33:22.).  Dr. Almeroth testified that .au files do not necessarily contain text files, not making it a necessary requirement in how the Fenner page operated.  (9/11/14 Afternoon Tr., 32:2-19).  Dr. Almeroth opined that claim 34 valid for the same reasons claim 33 is valid.  (9/11/14 Afternoon Tr., 40:9-18.).

### (3) Surfpunk/NCSA

Like the above references, the Surfpunk reference fails to disclose numerous elements of the '504 Patent.  Essentially, CBS claims through Dr. Porter that because this was a "working website" it has to have most of the elements of the '504 Patent.  (Trial Tr. 9/10 Afternoon, 86:10-94:10).  Dr. Almeroth stated, "just having a web server doesn't mean that there's one or more data storage servers, that there's one or more communications interfaces, including the rest of the language in that particular limitation, or that there's one or more processors coupled to said one or more data storage servers.  There's variability in what the backend components be, whether it's a single machine or an array of machines.  And depending on what that configuration is, it may or may not meet the limitations."  (Trial Tr. 9/11/2014 Afternoon, 45:13-46:5).  Further Surfpunk does not disclose a compilation file or that it was updated as new episodes become available. (Trial Tr., 9/11/2014 Afternoon, at 45:46:8-47:16).  Further, each link in the Surfpunk reference is to different audio file that is a segment of a particular show, not an episode as

required by the '504 Patent.  (Trial Tr., 9/11/2014 at 16:17:6; *see also* DTX-CBS0017).  Thus, the elements of Claim 31 have not been met.

In addition to the missing elements from Claim 31, Surfpunk does not disclose elements from the dependent claims 32-34 either.  For example, no reasonable jury could find that in Surfpunk the audio format is compressed.  (Trial Tr., 9/11/2014 Afternoon, 47:22-49:1).  Dr. Almeroth explained other elements that were missing as well.  (Trial Tr., 9/11/2014 Afternoon, 47:22-51:11).

### (4)     The RealAudio Websites

No source code was produced for the RealAudio websites.  (Trial Tr., 9/11/2014 Afternoon, 52:20-22).  Instead, CBS relies upon screen shots from the webpages themselves. Thus, like the other prior art references, there is no evidence of how the backend of the web sites worked and thus, for similar reasons as above, a reasonable juror could not find that the RealAudio webpages disclose all of the elements of the '504 Patent.  In fact, CBS's expert, Dr. Porter agreed that he did not know what the back end architecture was for the RealAudio website.  (Trial Tr., 9/11/2014 Morning, 19:11-16.)  Specifically, elements such as the communication interface and whether the webpages were updating are not disclosed by the webpages themselves and Dr. Almeroth testified that one skilled in the art would not have had access to the testimony of any of the witnesses upon which CBS relies.  (Trial Tr., 9/11/2014, Afternoon, 52:10-56).

In addition, the webpages only disclose a single episode on each webpage, contrary to the '504 Patent requirement of a "series of episodes."  (Trial Tr., 9/11/2014 Afternoon, 56:20-59:7; *see also* DTX-NBC0074.)  In fact, for the NPR site, Mr. Dean testified the following:

> Question: Do you know if NPR ever made a website that had multiple editions of
> Morning Edition on it at a single webpage?

> Answer: It doubt it.  It would have been a very long page.
> Question: Well, it could have done, say a week's worth, correct?
> Answer: That's true.  Yeah, but to the best of my knowledge, that wouldn't have
>     been a good user interface, so, no.

(Trial Tr., 9/9/2014 Afternoon, 84:23-85:3).   The admission by Dean conclusively sinks

RealAudio as an anticipatory reference.


## IV.   NO REASONABLE JUROR COULD FIND THAT CBS HAS MET ITS BURDEN TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CLAIMS OF THE '504 PATENT ARE OBVIOUS

Defendant CBS provided no analysis of why the references above would invalidate the

'504 Patent under obviousness.   Instead, CBS's expert, Dr. Porter simply stated during his

testimony that each reference invalidated the '504 Patent by both anticipation and obviousness.

There was no testimony about what elements may have been obvious.   Instead, the testimony

below regarding the NRL prior art was exemplary of what occurred:

> Q.  So based on your analysis, do you have an opinion as to whether all of the claims of the '504 patent that are being asserted against CBS are invalid over the Fenner NR – NRL website?
>
> A.  Yes, I do.  The Fenner website has all the claims, 31, 32, 33, and 34, and the – those claims are obvious in light of Fenner's website.
>
> Q.  Thank you.  So anticipated and obvious?
>
> A.  Anticipated and obvious

(Trial Tr., 9/10/14 Afternoon, 76:5-14).   In nine lines of trial testimony on obviousness, Dr.

Porter did not undergo an obviousness analysis, provided no testimony why Fenner would be a

single prior at reference, nor did he identify what combinations of the other 4 prior art references

would render the patent invalid.   Dr. Almeroth on the other hand testified explained in detail why

claims 31-34 were not rendered obvious.   (Almeroth Testimony, Trial Tr., 9/11/2014 Afternoon,

40:19-51:12.).

Similar analysis can be found for each of the other references.  (*See id.* at 91:20-23; 92:16-94:10; 98:4-10; 110:19-112:25; 116:14-22; 125:7-13; and 126:18-23).

**V.    NO REASONABLE JUROR COULD FIND THAT CBS HAS MET ITS BURDEN TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE PERMITTED MULTI-REFERENCE OBVIOUSNESS PRIOR ART COMBINATIONS PURSUANT TO THE COURT'S ORDER, DKT. NO. 277, DO NOT RENDER ANY OF THE ASSERTED CLAIMS OF THE '504 PATENT OBVIOUS**

The dispute over obviousness has a history in this case.  When Defendants served invalidity contentions per the Patent Local Rules in October 2013—and again in February 2014 per agreement by the parties when new Defendants were consolidated for pre-trial purposes— over 800 pages of vague contentions were served.  These voluminous contentions did not expressly set forth the specific obviousness combinations and theories intended to advance at trial in violation of Patent L.R. 3-3(b).  Plaintiff, thus, filed a motion to strike the obviousness contentions.  *See* 2:13-cv-13, Dkt. 95.

Then by agreement of the parties and subsequent order of the Court, Defendant limited the number of references it was asserting. *See* 2:13-cv-13, Dkt. #156. At that time, CBS identified three obviousness combinations (Compton and RealAudio Website; SurfPunk and Klemets; and Klemets and RealAudio Website), but still failed to identify the theories behind combining these references.  With Klemets not used at trial, dropped strategically by CBS, the Klemets multi-reference combinations are out of the case.  Plaintiff's motion to strike the obviousness contentions was granted-in-part, with the Court striking the multi-reference obviousness contentions, but allowing Defendant to identify any combinations that it can show were adequately disclosed in the invalidity contentions.  *See* 2:13-cv-13, Dkt. 251.

Defendant filed a motion to identify specific multi-reference obviousness combinations that were adequately disclosed, and the Court allowed Defendant to argue five specific theories at trial (*see* 2:13-cv-13, Dkt. 277):

- If Compton-2 does not disclose updating of the compilation file as new episodes become available, each of the other RealAudio references (Sackman-1, Oliver, Richardson, Ojeda-Zapata) teach that limitation. (Mot. at 4; Oct. '13 Contentions at 33, Feb. '14 Contentions at 34.)

- If Compton-2 does not disclose an audio file being a media file, Oliver teaches that limitation. (Mot. at 4; Oct. '13 Contentions at 34, Feb. '14 Contentions at 36.)

- If Klemets does not disclose a media file representing an episode from a series of episodes, Surfpunk teaches that limitation. (Mot. at 5; Oct. '13 Contentions at 30, Feb. '14 Contentions at 31.)

- If Klemets does not disclose a media file representing an episode from a series of episodes, each of the RealAudio references (Sackman-1, Oliver, Richardson, Kilscheimer, NOAA Report, Ojeda-Zapata) teach that limitation. (Mot. at 5-6; Oct. '13 Contentions at 30, Feb. '14 Contentions at 31.)

- If Klemets does not disclose updating of the compilation file as new episodes become available, each of the other RealAudio references (Sackman-1, Oliver, Richardson, Ojeda-Zapata) teach that limitation. (Mot. at 5-6; Oct. '13 Contentions at 33, Feb. '14 Contentions at 34.)

The Court specifically excluded any other combinations and theories to combine.  *See* 2:13-cv-13, Dkt. 277 at 2.  ("Defendants have not shown that any remaining multi-reference obviousness combinations were properly disclosed in their invalidity contentions, and the Court does not

endorse the theory that (without such disclosure) Defendants are free to assert that any part of any of the prior art references serves to fill any other (unidentified) holes in any other reference.")

At trial, Defendant did not advance *any* of these combinations and theories. In fact, Defendant did not imply or suggest combining any of the references to render the asserted claims obvious. Additionally, Defendant did not present any evidence regarding the Klemets reference. In light of background and evidence presented at trial, Plaintiff is entitled to a Judgment as a Matter of Law that CBS has not met its burden of clear and convincing evidence that the '504 Patent is invalid due to multi-reference obviousness.

## VI.   NO REASONABLE JUROR COULD FIND THAT CBS'S APPARATUS DOES NOT INFRINGE CLAIMS 31-34 OF THE '504 PATENT

Dr. Almeroth provided an element by element basis of presenting the evidence of how CBS's apparatus infringes claim 31. (Trial Tr. 9/9/14 Morning, 25:12-78:18.) CBS only disputes that communication interface and predetermine URL language of the asserted claims are not met by CBS apparatus – conceding that all other elements are present. Given the overwhelming evidence presented to the jury on infringement as specified in further detail below, no reasonable jury could have come to any other conclusion, but that CBS infringed asserted claim of the '504 Patent.

Dr. Almeroth testified that in analyzing the issue of infringement that he reviewed the Patent, its file history, CBS documents, deposition of 30(b)(6) witnesses and fact witnesses, networking testing via Fiddler2 and WireShark. Based on this, Dr. Almeroth explained on an element by element basis why CBS' apparatus infringes the asserted patent.

Further, CBS's non-infringement expert, Dr. Porter, conceded that CBS's non-infringement argument concerning the asserted claims is limited to whether there is (1)

14

communications interface; and (2) url specifying the media file storage location.  (Trial Tr., 9/10/14 Morning Tr., 142:21-144:1.)  CBS is not challenging any other aspects of the asserted claim elements.  (*Id.* at 143:22-144:1.)

## CLAIM 31:

    a.   Preamble

The parties have not disputed the preamble is not met by CBS' apparatus.  (Trial Tr., 9/9/14 Morning, 40:12-14.).   Nonetheless, Dr. Almeroth presented the results of his network tracing tests that the preamble was met by CBS. (*Id.* at 40:17-42:12.)

    b.   First element of Claim 31

CBS's apparatus has more than one data storage servers.  (Almeroth, 9/9/14 Morning Tr., 42:24-43:5.).  In fact, Dr. Porter himself agrees that the accused apparatus status uses more than one server. (Trial Tr., 9/9/14 Morning, 43:7-19.)  Dr. Porter does not offer any testimony to the contrary. (*See* Porter Trial Testimony).

    c.   Second element of Claim 31

CBS's communication interface meets the requirement of this claim because its interface "is used for receiving the requests that come from the user's device and responding to those request.  It's used for storing the media files and storing the compilation file.  It's used to communicate all of the different pieces of information that are required to be stored and the provided by claim 31." (Trial Tr. 9/9/14 Morning, 46:13-18.)

The jury heard testimony from Dr. Almeroth explaining how the communication interface of the '504 Patent works – as exemplified by Figure 1 of the '504 Patent.  Further, the Fiddler trace and CBS's audience network architecture diagram was presented and explained by Dr. Almeroth as to how the CBS apparatus meets this claim element.  (Trial Tr. 9/9/14 Morning, 46:19-50:1.)  The jury even heard testimony from CBS's witness that communication interfaces

are present if there is a web page.  (*See e.,g.,* Trial Tr. 9/10/14 Afternoon, 86:25-87:2).  There was also testimony from CBS's expert on this issue.  (Trial Tr., 9/10/2014 Afternoon, 151:5-15.)  No reasonable juror could have concluded that this claim element was not met by CBS' apparatus.

CBS's apparatus has more than one processor.   DX-62, it's own document, the architecture figure depicting its audience network shows that there are multiple servers with processors – thus meeting this claim limitation.  (Trial Tr. 9/9/14 Morning, 50:3-51:1.)  Dr. Almeroth further testified that Dr. Porter, CBS' expert, as not disagreeing with him that the servers comprised of CBS' apparatus including Akamai and the Platform – that those servers had processors.  The jury heard testimony that even CBS's documents and CBS personnel do not dispute that the multiple servers deployed would have processors.  (Trial Tr. 9/9/14 Morning, 51:13-17.)

Concerning the requirement of "storing one or more media files . . . stored at a unique storage location specified by a unique episode url," the Jury received ample evidence that this requirement was met by CBS.  (Trial Tr. 9/9/14 Morning, 51:25-56:4.)  Evidence on literal infringement and under the doctrine of equivalents was presented to the jury on this requirement.  The jury was also presented by CBS Big Bang Landing page, where multiple episodes were available on the landing page, with a user clicking on a blue button to start playing of an episode.

No reasonable juror could conclude that this claim element was not met by CBS's apparatus.

a.   Third element of Claim 31

Over time, CBS' webpage (Big Bang Theory) as an example, updated its web page over time, updating the page as new episodes were made available on its website.  (Trial Tr. 9/9/14 Morning, 58:17-59:25.).  CBS's apparatus uses an html file as the compilation file. In the

instance of Big Bang Theory, it is www.cbs.com/shows/Bigbangtheory/video. This url does not change even as shows are being added or taken from the url.  (*Id.* at 60:1-7.)  At the url, there is episode information in text, containing attribute information as required by the patent.  (*Id.* at 60:10-25.).   While the file itself may change over time, the url for it does not. (*Id.* at 61:2-8.)

Regarding the "said attribute data . . given one of said episodes", the Jury heard testimony and evidence that this element is met by CBS' apparatus.  The attribute data is present in CBS' html file; the url provides storage location of one ore more media files.   Dr. Almeroth testified that specifying one or more storage locations requirement is met by CBS' apparatus – because when users click the button for an episode, the show will play. With the url, the server has the information to deliver the correct show to the end user – as evidenced by the Fiddler and Wireshark analysis.  (Trial Tr. 9/9/14 Morning, 66:16-23.).

b.   Fourth Element

CBS' apparatus satisfies this final element of claim 31.   DX-62, CBS's architecture data shows that its communication interface and system performs as required by this element of claim 31.  (Trial Tr. 9/9/14 Morning, 67:7-70:11.)

**CLAIM 32:**

This claim is dependent on claim 31, with the additional requirement of compression. CBS apparatus compresses its media files.  (Trial Tr. 9/9/14 Morning, 74:8-75:17.)

**CLAIM 33:**

This claim is dependent on claim 31, with the additional requirement that some of the media files contain displayable text displayed or reproducible in audible form by the requesting client device.  CBS's apparatus includes text data as part of its media file, and thus meets this claim.  (Trial Tr. 9/9/14 Morning, 75:18-76:16.)

**CLAIM 34:**

This claim depends on claim 33, with the additional requirement that "attribute data for each given one of said episodes further includes displayable text data describing said given one of said episodes". (Trial Tr. 9/9/14 Morning, 75:18-76:16.)  CBS's apparatus meets this claim limitation – CBS' apparatus uses an html file that has the required attribute data. (Trial Tr. 9/9/14 Morning, 76:21-78:17.)

**VII.   NO REASONABLE JUROR COULD FIND THAT CBS HAS MET ITS BURDEN TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE '504 PATENT CLAIMS PATENT-INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101.**

In the joint pre-trial order, CBS claims that the '504 Patent is invalid under 35 U.S.C. § 101. D.I. 267. The Supreme Court has held that an idea is not patent-eligible if it claims "laws of nature, natural phenomena, and abstract ideas." *Diamond v. Diehr*, 450 U.S. 175, 191 (1981). CBS must prove invalidity on this ground by clear and convincing evidence. Nothing in evidence or argument suggests, let alone proves by clear and convincing evidence, that the '504 Patent is directed to a law of nature, a natural phenomena, or an abstract idea. Accordingly, the Court should hold that no reasonable juror could find invalidity on this ground as CBS has failed to prove this defense as a matter of law.

Respectfully Submitted,

**PERSONAL AUDIO, LLC**

*/s/ Papool S. Chaudhari*

Dated: September 14, 2014          By: _____
                                                        Jeremy S. Pitcock
                                                        PITCOCK LAW GROUP
                                                        1501 Broadway, 12th Floor
                                                        New York, NY 10036
                                                        (646) 571-2237
                                                        (646) 571-2001 Fax

18

jpitcock@pitcocklawgroup.com

Andrew W. Spangler
Texas State Bar No. 24041960
SPANGLER LAW, P.C.
208 N. Green St, Suite 300
Longview, Texas 75601
(903) 753-9300
(903) 553-0403 Fax
spangler@spanglerlawpc.com

Papool S. Chaudhari
Texas State Bar No. 24076978
CHAUDHARI LAW, PLLC
P.O. Box 1863
Wylie, Texas 75098
Phone: (214) 702-1150
Fax: (214) 705-3775
Papool@ChaudhariLaw.com

John Lee (admitted to E.D. Texas)
Jennifer L. Ishimoto (admitted *pro hac vice*)
BANIE & ISHIMOTO LLP
1370 Willow Road, 2nd Fl
Menlo Park, CA 94025
(650) 241-2771
(650) 241-2770 (Fax)
jlee@banishlaw.com
ishimoto@banishlaw.com

**ATTORNEYS FOR PLAINTIFF
PERSONAL AUDIO, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on September 14, 2014, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Papool S. Chaudhari
Papool S. Chaudhari
