**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

PERSONAL AUDIO, LLC,

      Plaintiff,

      v.

CBS CORPORATION,

 Defendant.

2:13-cv-00270-JRG-RSP

JURY TRIAL DEMANDED

**<u>DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER
OF LAW OF INVALIDITY</u>**

# TABLE OF CONTENTS

I.             INTRODUCTION ................................................................................................ 1

II.           LEGAL STANDARD........................................................................................... 1

III.          EVIDENCE DEMONSTRATES THE ASSERTED CLAIMS ARE INVALID AS A MATTER OF LAW ................................................................................................. 2

    A.       Anticipation........................................................................................... 2

    B.       Obviousness .......................................................................................... 3

    C.       Compton Anticipates and Renders Obvious Claims 31-34 of the '504 Patent....... 3

        1.      Compton Anticipates and Renders Obvious Claim 31 of the '504 Patent........................................................................................... 3

            a.     Episodes ................................................................................ 5

            b.     Predetermined URL ............................................................... 7

            c.     Compton is Enabling.............................................................. 7

        2.      Compton Anticipates and/or Renders Obvious Dependent Claims 32-34................................................................................................. 8

    D.       SurfPunk Anticipates and Renders Obvious Claims 31-34 of the '504 Patent....... 9

            a.     SurfPunk is a Printed Publication ................................... 11

    E.       NCSA Website Anticipates and Renders Obvious Claims 31-34 ...................... 12

    F.       NRL Website Anticipates and Renders Obvious Claims 31-34 .......................... 14

    G.       RealAudio Website Anticipates and Renders Obvious Claims 31-34................... 15

    H.       Each of the Independent References Renders Claims 31-34 Obvious ................. 18

        1.      Claim 31.............................................................................. 19

        2.      Claim 32.............................................................................. 24

        3.      Claim 33.............................................................................. 24

        4.      Claim 34.............................................................................. 25

Defendant CBS Corporation ("Defendant"), by and through its counsel, respectfully moves this Court to grant Judgment as a Matter of Law in its favor, pursuant to Federal Rule of Civil Procedure 50(a).

## I.      INTRODUCTION

At the close of evidence, judgment as a matter of law is warranted because a reasonable jury would have to find U.S. Patent No. 8,112,504 ("the '504 patent") invalid. This Court should therefore grant judgment as a matter of law in favor of Defendant. *See* Fed. R. Civ. P. 50(a); *Anthony v. Chevron United States*, 284 F.3d 578, 582-83 (5th Cir. 2002).

## II.     LEGAL STANDARD

Judgment as a matter of law is warranted where a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *see also Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 690 (5th Cir. 2007).[1] The Supreme Court has explained that the "standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). As such, judgment as a matter of law is appropriate when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997).  The party opposing the motion must provide actual evidence, not "mere speculation and conjecture." *Anthony v. Chevron United States*, 284 F.3d 578, 583 (5th Cir. 2002). A mere scintilla of evidence is insufficient to present an issue to the jury. *Id.*; *Travis v. Board of Regents of the University of Texas System*, 122 F.3d 259, 263 (5th Cir. 1997) ("A court should grant a Rule 50(a) motion not only when the non-

---

[1] In the Fifth Circuit, the appellate court reviews a trial court's denial of a judgment as a matter of law *de novo*. *Id.*

movant presents no evidence, but also when there is not a sufficient "conflict in substantial evidence to create a jury question.").

### III.   EVIDENCE DEMONSTRATES THE ASSERTED CLAIMS ARE INVALID AS A MATTER OF LAW

Personal Audio has failed to rebut Defendant's evidence that the '504 patent is invalid as a matter of law. Defendant has established that there is not substantial evidence to support a jury verdict that the '504 patent is valid.  *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1342-44 (Fed. Cir. 2012) (reversing denial of JMOL as to invalidity) (applying Fifth Circuit law); *Orion IP, LLC v. Hyundai Motor America*, 605 F.3d 967, 973-978 (Fed. Cir. 2010) (same). Therefore, judgment as a matter of law in Defendant's favor is warranted.

Dr. Almeroth's testimony to the contrary does not suffice. Conclusory expert testimony does not qualify as substantial evidence. *See Iovate HealthSciences, Inc. v. Vio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1381-82 (Fed. Cir. 2009) (applying Fifth Circuit law). "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). In sum, judgment as a matter of law is warranted.

### A.  Anticipation

Anticipation of a patent claim under 35 U.S.C. § 102 "requires that every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in the possession of the invention." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008). However, "a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva*

*Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1055 (Fed. Cir. 2010) ("the dispositive question regarding anticipation [is] whether one skilled in the art would reasonably understand or infer from a [prior art reference]" that every claim element is disclosed in that reference).

### B.  Obviousness

A patent claim is invalid if "the differences between the subject matter [of the claim] and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a).  As such, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Agrizap, Inc. v. Woostream Corp.*, 520 F.3d 1337, 1343 (Fed. Cir. 2008). Moreover, "a single prior art reference can render a claim obvious." *SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000). The suggestion or motivation to modify the reference can come from the reference itself, "the knowledge of one of ordinary skill in the art, or from the nature of the problem to be solved." *Id.*

"In reaching an obviousness determination, a trial court may conclude that a patent claim is obvious, even in light of strong objective evidence tending to show non-obviousness." *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007). Ultimately, the "judgment of obviousness is a legal determination." *KSR*, 550 U.S. at 427; *see also Agrizap, Inc.*, 520 F.3d at 1343 (reversing the district court's denial of JMOL and determining that claims were obvious).

### C.  Compton Anticipates and Renders Obvious Claims 31-34 of the '504 Patent

1.  <u>Compton Anticipates and Renders Obvious Claim 31 of the '504 Patent</u>

3

Compton[2] describes a system by which video files containing news content from a television news show were made available over the Internet by providing a web page with links from which users could select multiple video files to display on their computers. Compton is a prior art publication under 35 U.S.C. §§ 102(a) and (b).

Dr. Porter testified that Compton describes an apparatus for distributing the CNN NEWSROOM episodes including the same elements as those set forth in Claim 31 of the '504 patent. Compton describes storing the media files containing the episodes on a server that was connected to the Internet via a single connection. Compton also specifically describes the use of communication interfaces connected to the Internet to receive requests and respond to those requests by downloading web pages and/or files identified by a URL that are specified by the requests coming from the client devices. *See, e.g.,* 9/10/14 PM Tr. at 115-18; Compton at Figs. 3-4.

Compton also describes the use of processors that perform all the steps required in Claim 31: storing the media files representing each episode as it becomes available at a storage location specified by a unique URL and storing an updated version of the web page (the compilation file, content.html) in a data storage server identified by a predetermined URL (content.html). The web page described in Compton meets the requirements of Claim 31 for an updated version of a compilation file. An updated version of contens.html is created as new episodes become available, and this file contains displayable text describing currently available episodes, and it includes URLs specifying the storage locations of media files representing those episodes. *See, e.g.,* 9/10/14 PM Tr. at 51-52, 114-15, 118-24; Compton at Fig. 1.

---

[2] Charles L. Compton and Paul D. Bosco, Internet CNN NEWSROOM – A Digital Video New Magazine and Library, Proceedings of the International Conference on Multimedia Computing and Systems, IEEE May 1995, pp. 296-301 ("Compton") (DTX3).

Finally, Compton discloses the use of one communication interface to receive a request from a user's client device for the updated version of the web page (compilation file), to download that web page to the user, and thereafter to respond to a request for a media file contained in the updated compilation file. *See, e.g.,* 9/10/14 PM Tr. at 124-25.

The only two elements of Claim 31 that Personal Audio asserts are missing from Compton are (1) the dissemination of episodes of a series and (2) the use of a "predetermined URL" for the claimed "updated version of a compilation file." *See, e.g.,* 9/11/14 PM Tr. at 68-72.   Additionally, Personal Audio asserts that Compton is not enabling because it does not contain the contents.c source code used for the underlying CNN Newsroom system. *Id.* at 67-68.

### a.  Episodes

Compton discloses the claim element of "episodes of a series" because the video files disseminated by the CNN Newsroom website constitute episodes. *See, e.g.,* 9/10/14 PM Tr. at 122-24. In its Memorandum and Order on Claim Construction, this Court construed episodes to mean "program that is part of a series." Dkt. 182 at 10. The parties agreed construction of a series a "group or connected succession" *See* Dkt. 77 at 2. The system used for the Internet CNN Newsroom took the televised program and then created video files for the day's segments. *See, e.g.,* 9/10/14 PM Tr. at 122-24. Compton therefore discloses the "episodes represented in said series of episodes" limitation for at least three reasons.

First, the specification of the '504 patent itself expressly provides that a news story is a program, *see* DTX1 col. 20, lines 5-7, and that "a given program segment may represent an episode in a series." *Id.* at col. 19, lines 36-37. Likewise, the specification specifically describes the creation of a series of episodes based on news stories on a particular topic, such as the America's Cup yacht races. *Id.* at col. 20, lines 5-10.  Plaintiff's expert Dr. Almeroth admits that

5

the news segments in Compton are "programs" and that the '504 patent says that a given program segment may represent an episode in a series.  9/11/14 PM Tr. at 97.

Second, if Personal Audio were correct that the "segments" in Compton are not "episodes," Compton itself suggests using its technology for sitcom episodes and other types of episodic content. *See* Compton at 301; 9/11/14 AM Tr. at 49. Even without that specific suggestion to do so, it would be no more than common sense and routine variation to use the same apparatus with the exact same technology used for news reports to disseminate audio or video files containing other content that was linked together including programs in a series (i.e., episodes). *See, e.g.,* 9/11/14 PM Tr. at 117-120, 123.  Compton writes that "[m]ost of the mechanisms developed for the CNN NEWSROOM program could easily be used to automatically generate digital video magazines and libraries based on other programs" and specifically refers to "any other program for which users might want to be able to see past episodes (i.e., other news programs, sitcoms, soap operas. . .)." Compton at 301; 9/11/14 PM Tr. at 121-23; 9/10/14 PM Tr. at 122-24.

Third, the law is clear that the content of a media file cannot be used to create a patentable distinction over the prior art for the '504 patent's apparatus claims. *See In re Bryan*, 323 Fed. Appx. 898, 901 (Fed. Cir. 2009) (noting that the recitation of printed matter in a claim cannot distinguish the claim from prior art where there is no "new and unobvious functional relationship between the printed matter and the substrate") (quoting *In re Ngai*, 367 F.3d 1336, 1339 (Fed. Cir. 2004)). The apparatus used would be the same for delivering a file containing an "episode" as it would be for a non-episode video or audio file. *See, e.g.,* 9/11/14 PM Tr. at 117-120, 123. Where, as here, the asserted distinction of the claimed invention over the prior art is based on whether the particular video is part of a series or not, as a matter of law the claimed

6

invention is not patentable on that basis. *See In re Bryan*, 323 Fed. Appx. 898, 901 (Fed. Cir. 2009); *In re Ngai*, 367 F.3d 1336, 1339 (Fed. Cir. 2004); *Ex Parte Mathias*, Appeal No. 2005-1851, 2005 Pat. App. LEXIS 50, at *7 (Pat. Tr. & App. Bd., Aug. 19, 2005) (noting the un-patentable difference between sporting and non-sporting events).

### b.  Predetermined URL

Compton also discloses "a compilation file in one of said one or more data storage servers at a storage location identified by a predetermined URL." The parties have agreed that a predetermined URL is construed to mean "a URL determined in advance." *See* Dkt. 177 at 2. The URL used in the Compton reference for the May 19, 1994 webpage is http://www.nmis.org/NewsInteractive/CNN/Newsroom/940519/contents.html.     Thus,     the Compton system uses a predetermined URL specifying the storage location for the web page that includes a formula for the date of the particular day's episodes. *See, e.g.*, 9/10/14 PM Tr. at 120-21; 9/11/14 PM Tr. at 130-31. Moreover, Compton describes in detail the use of a computer program to generate the HTML for these webpages and place them on the web, confirming that the URL for each day's episodes was predetermined and assigned to that day's new episodes as they became available. *See e.g.,* Compton at 298; 9/10/14 PM Tr. at 120-21.

### c.  Compton is Enabling

Compton is also enabling as a matter of law. The only issue is whether the person of ordinary skill would be able to build the apparatus claimed in Claim 31 of the '504 patent based on the disclosure of Compton. *See In re Morsa*, 713 F.3d 104, 109 (Fed.Cir. 2013)*; Motorola, Inc. v. Interdigital Technology Corp.*, 121 F.3d 1461, 1471 (Fed. Cir. 1997) (holding that there was sufficient evidence to entitle the jury to conclude a reference was enabling where the reference provided block diagrams at a level of detail similar to those contained in the patent).

Personal Audio's only basis for contending that Compton is not enabling is that it does not contain the contents.c source code.  9/11/14 PM Tr. at 67-68.  However, Dr. Almeroth admitted that an article describing a website can be enabling if it does not disclose the source code and that the '504 patent itself is enabling even though it does not disclose source code.  *Id.* at 94.  Compton would enable a person of ordinary skill in the art to construct the simple apparatus claimed in Claim 31 of the '504 patent. Compton provides detailed information about the apparatus, including the appearance of the web page used as the table of contents, a diagram showing the process used for the automatic assembly of the table of contents, a diagram and detailed description of how the video files are created and stored on a server, a diagram showing how the video files are distributed from that server over the internet to users using a connection to the Internet, and a detailed description of the operation of the system to allow a user to click on a link to one of the video files and download that video file onto the user's hard drive. *See, e.g.,* 9/10/14 PM Tr. at 51-52, 113-27. In sum, Compton provides at least as much disclosure as the '504 patent itself.  *See SRI Int'l, Inc. v. Internet Sec. Systems, Inc.*, 511 F.3d 1186, 1193 (Fed. Cir. 2008) ("Thus, if the specification of the ′212 patent was sufficient to enable the claims of that patent, so, too, is the description of EMERALD 1997.").

For the above reasons, this Court should rule that Compton anticipates and renders obvious Claim 31 as a matter of law.

### 2.  Compton Anticipates and Renders Obvious Dependent Claims 32-34

Personal Audio's expert does not dispute that Compton discloses the additional limitations recited in claims 32-34.  9/11/14 PM Tr. at 73-74.  Claim 32 adds only the limitation of using compressed audio recordings. Compton discloses that media files may contain digital compressed video and audio recordings that may be reproduced in audible form by a requesting client device. *See, e.g.,* 9/10/14 PM Tr. at 125.

Claim 33 adds the limitation that "at least some of said media files contain text data which may be displayed or reproduced in spoken audible form by a requesting client device. Personal Audio has interpreted this limitation to mean that if any of the episodes used in the apparatus contain any text displayed on the screen, then this limitation is practiced. *See, e.g.,* 9/9/10 AM Tr. at 76; 9/10/14 PM Tr. at 126. The CNN program disclosed in Compton, which includes closed captioning, would certainly disclose to the person of ordinary skill in the art the inclusion of text under Personal Audio's own approach to this limitation. *See, e.g.,* Compton at 297; 9/10/14 PM Tr. at 126. A person of ordinary skill in the art would certainly understand that any television program like the CNN Newsroom program would include displayable text, particularly in light of the screen shot of the Table of Contents for the May 19, 1994 episodes shows that there was text in at least one video segment.  9/10/14 PM Tr. at 125-26.

Claim 34 adds to Claim 33 the limitation that the attribute data for each given one of said episodes further includes displayable text data describing said given one of said episodes. Compton discloses including a written description to be displayed with the video file. *See* Compton at 298; 9/10/14 PM Tr. at 126.

In sum, the evidence shows, as Dr. Porter testified, Claims 31-34 are anticipated and rendered obvious by Compton.  9/10/14 PM Tr. at 126.

### D.  SurfPunk Anticipates and Renders Obvious Claims 31-34 of the '504 Patent

SurfPunk refers to issue #80 of the SURFPUNK[3] Technical Journal, an electronic magazine centering on cyberspace and other technical issues.   SURFPUNK discloses an apparatus for disseminating new episodes of the Geek of the Week (which were being made available by April 1993, DTX 16) program over the Internet.  Surfpunk included over 100 issues.

---

[3] Henry Strickland, BUBBLES: talk radio; A New Age; Clipper Chip, SURFPUNK Technical Journal No. 80 (surfpunk@osc.versant.com) <surfpunk-0080@SURFPUNK.Technical.Journal>, Apr. 23, 1993 ("Surfpunk") (DTX4); *see also* DTX200, DTX201, DTX203.

DTX200, DTX201, DTX203, DTX 204; 9/10/14 AM Tr. at 110.  As set forth in detail Dr. Porter's testimony, the SURFPUNK reference, including the HTML code contained therein, anticipates and renders obvious each and every element of claims 31-34 of the '504 patent as prior art under 35 U.S.C. § 102(a), (b).

Dr. Porter explained that SurfPunk discloses an apparatus for disseminating a series of episodes represented by media files over the internet, 9/10/14 PM Tr. at 86-87, and because the website was operational it included a processor with data storage servers and a communications interface, 9/10/14 PM Tr. at 86-89, and that new files were added from time to time (and that a person of ordinary skill in the art would understand this), 9/10/14 PM Tr. at 88-90, that the URLs specified the storage location of the media files, 9/10/14 PM Tr. at 88-91, and that the apparatus was connected to the internet and received and responded to requests from client devices through an interface.  9/10/14 PM Tr. at 90-92.  Dr. Porter concluded therefore that claim 31 was anticipated by SurfPunk. 9/10/14 PM Tr. at 94, and that it would have been obvious in light of SurfPunk, 9/10/14 PM Tr. at 92, 94.

Dr. Porter's conclusions are corroborated by the evidence and by Mr. Strickland's testimony.  9/10/14 AM Tr. at 109-23.  For example, Mr. Strickland testified that in Issue No. 80 he specifically identified the Internet Talk Radio website hosted at the NCSA.  9/10/14 AM Tr. at 117-18.

SurfPunk also anticipates and renders obvious claim 32 because the audio files disclosed were in the Sun Microsystems .au format, which used u-law encoding, a compression scheme. *See, e.g.,* DTX 33 at 28; DTX58; DTX55; 9/10/14 PM Tr. at 93-94. SurfPunk also anticipates and renders obvious claim 33 because the .au format included text in the file. 9/10/14 PM Tr. at 93-94. Finally, the SurfPunk anticipates and renders obvious claim 34 because the attribute data

10

describing the available files included displayable text such as the name of the person or the size of the file. 9/10/14 PM Tr. at 94.

In summary, Dr. Porter concluded, and the evidence demonstrates as a matter of law, that SurfPunk anticipates and renders obvious claims 31, 32, 33, and 34.  9/10/14 PM Tr. at 94.

### a. SurfPunk is a Printed Publication

Surfpunk constitutes a printed publication as a matter of law. The question of whether or not a particular reference constitutes a publication under 35 U.S.C. § 102 is a legal issue. *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1364 (Fed. Cir. 2014)(citing *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008)).

The Federal Circuit recently confirmed that the distribution of a publication over an email distribution list constitutes publication as a matter of law. *Suffolk Techs*., 752 F.3d at 1364-65. The uncontroverted evidence, including, but not limited to, testimony from the individual responsible for creating and distributing Surfpunk, is that it was disseminated to the hundreds of members of the subscriber list on April 22, 1993. DTX9 (tallying the distribution at 309); 9/10/14 AM Tr. at 111-20.  Mr. Strickland specifically identified SurfPunk as Issue No. 80 of the Surfpunk Techncial Journal.  9/10/14 AM Tr. at 115-16.  Those undisputed facts alone are sufficient to conclude that Surfpunk constitutes a publication.

Moreover, the Surfpunk Technical Journal, including issue 80, was archived and publicly accessible on Mr. Strickland's public FTP server (ftp.yak.net) as of at least February 1994. 9/10/14 AM Tr. at 113-14.  Mr. Strickland explained that the site was also accessible through a search engine for FTP sites. *Id.* And Surfpunk was listed in two directories published before May 1996. Lisabeth A. King, Directory of Electronic Journals, Newsletters and Academic Discussion Lists (Ann Okerson, Ed. Assn Research Libraries 1994) (DTX 100); Tony Abbott, Internet World's on Internet 94: An International Guide to Electronic Journals, Newsletters, Texts,

Discussion Lists, and Other Resources on the Internet 288 (Mecklermedia 1994) (DTX 199).
Abbot describes Surfpunk as an "electronic magazine centering on cyberspace and technical
issues", while King notes that Surfpunk is distributed weekly by email.

As a matter of law, either the distribution of Surfpunk through email distribution to
hundreds of subscribers or the availability of Surfpunk on the FTP archive where the existence of
the files was publicized and a person of ordinary skill in the art could readily identify the subject
matter discussed in the issues would be sufficient to establish that it is a prior art publication.

**E.  NCSA Website Anticipates and Renders Obvious Claims 31-34**

The NCSA Website anticipates and renders obvious claims 31, 32, 33 and 34 of the '504
patent and qualifies as prior art under 35 U.S.C. § 102(a), (b), and (g). The NCSA Website was
invented, published, and in public use well prior to October 2, 1995, as evidenced by, *inter alia*,
SurfPunk and Mr. Strickland's testimony.   9/10/14 AM Tr. at 115-18 (Mr. Strickland describing
Issue No. 80 and its reference to the NCSA website which he distributed on April 22, 1993).

Prior to October 2, 1995, the NCSA GotW web page was mentioned in several sources,
including, for example:

- Marc Andreessen <ma…@ncsa.uiuc.edu> World Wide Web Access to ITR < MARCA.93Apr13060404@wintermute.ncsa.uiuc.edu> in Usenet newsgroups alt.radio.internet, 1993/04/13 ("Internet Talk Radio is up for grabs via World Wide Web at URL: http://www.ncsa.uiuc.edu/radio/radio.html") (DTX 47).

- John December, THE WORLD WIDE WEB UNLEASHED, 1247 (Sams Publishing June 1, 1995) ("December-2") ("ITR: Internet Talk Radio (http://www.ncsa.uiuc.edu/radio/radio.html") (DTX 43)

- Automatic Reply Program <Sites@radio.com> Internet Talk Radio Anonymous FTP Archives <internet-talk-radio/anonymous-ftp-list_764330571@rtfm.mit.edu> in Usenet newsgroups alt.internet.talk-radio,alt.radio.internet,alt.answers,news.answers, 1994/03/22 ("To access Internet Talk Radio in World Wide Web (WWW): http://www.ncsa.uiuc.edu/radio/radio.html") (DTX 30).

- Email from M. Andreessen to www-talk (April 10, 1993), available at http://web.archive.org/web/19970120084206/http://www.eit.com/goodies/lists/www.lists/www-talk.1993q2/0040.html (DTX 16).

Dr. Porter explained that SurfPunk/NCSA discloses an apparatus for disseminating a series of episodes represented by media files over the internet, 9/10/14 PM Tr. at 86-87, and because the website was operational it included a processor with data storage servers and a communications interface, 9/10/14 PM Tr. at 86-89, and that new files were added from time to time (and that a person of ordinary skill in the art would understand this), 9/10/14 PM Tr. at 88-90, that the URLs specified the storage location of the media files, 9/10/14 PM Tr. at 88-91, and that the apparatus was connected to the internet and received and responded to requests from client devices through an interface.  9/10/14 PM Tr. at 90-92.  Dr. Porter concluded therefore that claim 31 was anticipated by SurfPunk/NCSA. 9/10/14 PM Tr. at 94, and that it would have been obvious in light of SurfPunk/NCSA, 9/10/14 PM Tr. at 92, 94.

SurfPunk/NCSA also anticipates and renders obvious claim 32 because the audio files disclosed were in the Sun Microsystems .au format, which used u-law encoding, a compression scheme. *See* DTX 33; DTX55; DTX 48. 9/10/14 PM Tr. at 93-94.  SurfPunk/NCSA also anticipates and renders obvious claim 33 because the .au format included text in the file. 9/10/14 PM Tr. at 93-94*; see* DTX 33; DTX55; DTX 48.  Finally, the SurfPunk/NCSA anticipates claim 34 and renders it obvious because the attribute data describing the available files included displayable text such as the name of the person or the size of the file. 9/10/14 PM Tr. at 94.

In summary, Dr. Porter concluded, and the evidence demonstrates as a matter of law, that SurfPunk/NCSA anticipates and renders obvious claims 31, 32, 33, and 34.  9/10/14 PM Tr. at 94.

## F.  NRL Website Anticipates and Renders Obvious Claims 31-34

The NRL website anticipates and renders obvious claims 31, 32, 33 and 34 of the '504

patent as prior art under 35 U.S.C. § 102(a), (b), and (g). In summary, as Mr. Fenner testified and

Dr. Porter explained, the NRL website, as it was in use prior to May 1996, constitutes an

apparatus for disseminating a series of episodes represented by audio files, in particular, the use

of the NRL website to disseminate the editions (episodes) of the Geek of the Week program on

"Internet Talk Radio."  See, e.g., 9/10/14 AM Tr. at 38-77; 9/10/14 PM Tr. at 61.  That apparatus

uses the same components required in Claim 31.

 The NRL Website was invented, published, and in public use well prior to October 2,

1995.  Mr. Fenner testified that in 1993, he created web pages for disseminating Internet Talk

Radio (ITR) audio files produced by the Internet Multicasting Service which working at the

Naval Research Laboratory (NRL). See, e.g., 9/10/14 AM Tr. at 42-46; 9/10/14 PM Tr. at 61.

Mr. Fenner's live testimony regarding the website's functionality is corroborated by ample

documentary evidence.  See, e.g., DTX 189; DTX 188; DTX 56; DTX 186; DTX 187; DTX 30;

DTX   34;   DTX   35.   The   NRL   ITR   home   page   was   stored   at   the   URL

http://www.cmf.nrl.navy.mil/radio/radio.html.   Mr. Fenner testified that he wrote a script to

automatically update the GotW web page as new episodes became available. See, e.g., 9/10/14

AM Tr. at 44-45.  Moreover, Mr. Fenner's testimony is corroborated by scripts obtained from the

U.S. Navy as a result of a Freedom of Information Act (FOIA). DTX190.  Further, Mr. Fenner

testified that the GotW webpage was updated from time to time.  9/10/14 AM Tr. at 51.

Dr. Porter explained that the NRL website disclosed an apparatus for disseminating a

series of episodes represented by media files over the internet, 9/10/14 PM Tr. at 64, and because

the   website   was   operational   it   included   a   processor   with   data   storage   servers   and   a

communications interface, 9/10/14 PM Tr. at 64-65, 66-67, and that the automated scripts were

14

updating the website with new files from time to time, 9/10/14 PM Tr. at 67-68, that the URLs specified the storage location, 9/10/14 PM Tr. at 68-70, and that the apparatus was connected to the internet and received and responded to requests from client devices.  9/10/14 PM Tr. at 64-67, 72-74.  Dr. Porter concluded therefore that claim 31 was anticipated by Mr. Fenner's website. 9/10/14 PM Tr. at 73, and that it would have been obvious in light of Mr. Fenner's website, 9/10/14 PM Tr. at 73.

The NRL Website also anticipates and renders obvious claim 32 because the GotW audio files made available at the NRL Website were in the Sun Microsystems .au format, which used u-law encoding, a compression scheme. *See, e.g.,* DTX 33 at 28. 9/10/14 PM Tr. at 74-75. The NRL Website also anticipates and renders obvious claim 33 because the .au format included text in the file. *See, e.g,* 9/10/14 PM Tr. at 75. Finally, the NRL website anticipates and renders obvious claim 34 because the attribute data describing the available files included displayable text describing the episode by, for example, indicating the subject of the interview included in that episode. *See, e.g.,* 9/10/14 PM Tr. at 74-75.

In summary, Dr. Porter concluded, and the evidence demonstrates as a matter of law, that Mr. Fenner's website anticipates and renders obvious claims 31, 32, 33, and 34.  9/10/14 PM Tr. at 76.

**G.  RealAudio Website Anticipates and Renders Obvious Claims 31-34**

The RealAudio Website anticipates and renders obvious claims 31, 32, 33 and 34 of the '504 patent. Progressive Network's website ("RealAudio website") was invented, published, and in public use prior to May 1996, qualifying as prior art under 35 U.S.C. § 102(a), (b), and (g). The live testimony of Mr. Richard Dean, the admitted deposition testimony of Mr. Dewar and

Mr. Black, and admitted exhibits describing the RealAudio website[4] established that the RealAudio website anticipates and/or renders obvious the asserted claims.  *See, e.g.*, 9/9/14 PM Tr. 63-86 (Mr. Dean); 87-130 (Mr. Black); 131-149 (Mr. Dewar).   RealAudio disseminated episodes of National Public Radio content, ABC News content, and Earth & Sky content as new content became available. *See, e.g.*, DTX60 at 324-25; DTX62 at 188; DTX74 at 151; DTX58 at 16, Fig. 2-1; 9/10/14 PM Tr. at 95.

The RealAudio website apparatus used the same components required in Claim 31. *See, e.g.,* 9/10/14 PM Tr. at 98-99.   The RealAudio website, as well as the available audio programming, were stored on RealAudio's data storage servers.  *See, e.g.,* 9/9/14 PM Tr. at 67-68, 71-73, 94, 97, 98, 135, 136, 137, 140; 9/9/14 AM Tr. at 90. The RealAudio website also included one or more communication interfaces connected to the internet for receiving and responding to requests.  *See, e.g.,* 9/9/14 PM Tr. at 92, 93-94, 96-97, 133, 134-38; 9/10/14 PM Tr. at 99. The RealAudio website also included one or more processors. *See, e.g.,* 9/9/14 AM Tr. at 90; 9/10/14 PM Tr. at 100.   In summary, the RealAudio Website was an apparatus for disseminating a series of episodes represented by audio files, and in particular, serial programming content (episodes) from NPR, ABC News, and Earth & Sky.

The RealAudio Website also used processors for the functions required by Claim 31 of the '504 patent.  Specifically, the RealAudio Website stored audio files for episodes as those episodes became available at a storage location with a unique episode URL. *See, e.g.,* 9/10/14 Pm Tr. at 103-04.  As Messrs. Dean, Dewar, and Black explained, the RealAudio website was updated as new episodes became available. *See, e.g.,* 9/9/14 PM Tr. at 66, 72-73, 76, 119-20,

---

[4] *See, e.g.*, DTX43, DTX58, DTX60, DTX62, DTX63, DTX65, DTX67, DTX72, DTX74, DTX75, DTX77, DTX77a, DTX80, DTX81, DTX102, DTX147, DTX151, DTX154, DTX157, DTX172, DTX173, DTX175, DTX176, DTX177, DTX178, and DTX183.

134-35; 9/10/14 PM Tr. at 97. Those web pages as updated were stored at a storage location identified by a predetermined URL. *See, e.g.,* 9/9/14 PM Tr. at 76, 91-92, 96-98, 137-40; 9/10/14 PM Tr. at 104-5.

The RealAudio Website was updated when new episodes became available and that page contained attribute data including displayable text describing the available episodes (for example, the date of the content included in the audio file). *See, e.g.,* 9/9/14 PM Tr. at 67, 75, 93, 95, 135; 9/10/14 PM Tr. at 105. The RealAudio website also contained attribute data including episode URLs. Those episode URLs would direct a user to a ".RAM" file, and that .RAM file would include an episode URL that specifies the storage location of the ".RA" audio file containing NPR, ABC, or Earth&Sky content on the RealAudio server. *See, e.g.*, DTX58 at FIG. 2-1; 9/9/14 PM Tr. at 76, 94, 96-7, 99; 9:10/14 PM Tr. at 104. Dr. Almeroth interprets the claim language "episode URLs specifying the storage locations of one or more corresponding media files" to mean "that the URL can be used to determine where that storage location is." 9/9/14 AM Tr. at 52-53. Thus, claim 31 would be anticipated by the RealAudio website under Dr. Almeroth's interpretation of the claimed episode URLs since the episode URLs on the RealAudio website were used to determine the storage location of the .RA files. *See, e.g.,* 9/10/14 PM Tr. at 110-11, 106-7. However, Dr. Porter interprets the "episode URLs specifying the storage locations of one or more corresponding media files" claim limitation to require that each episode URL on a website has to tell the system "where the storage location of that file is." 9/10/14 PM Tr. at 130. Since it was a known alternative to have a direct link to a .RA file on a website, claim 31 would be rendered obvious by the RealAudio website under Dr. Porter's interpretation of the claimed episode URLs. *See, e.g.,* 9/10/14 PM Tr. at 104, 110-11.

The RealAudio Website also used a single communication interface to perform the steps of receiving a request from a client device for the updated compilation file located at a predetermined URL; to download that file to the user's device; and to receive and respond to the request for media files identified by the episode URLs included in the updated compilation file. *See, e.g.,* 9/9/14 PM Tr. at 73-74, 94, 97, 98, 135-37, 140; 9/10/14 PM Tr. at 107-10. The compilation files and the audio files were stored in the same location and, therefore, the same communication interface was used to perform those steps.

The RealAudio Website also anticipates and renders obvious claim 32 because the audio files it disseminated were in the .RA format, which was a compressed audio format. *See, e.g.,* DTX58 at 3; 9/9/14 PM Tr. at 90, 138-39; 9/10/14 PM Tr. at 111.

The RealAudio Website also anticipates and renders obvious claim 33 because the .RA format included text in the file. *See, e.g.*, DTX58 at 5, 8, 11; 9/9/14 PM Tr. at 73; 9/10/14 PM Tr. at 111-12.

Finally, the RealAudio Website anticipates and renders obvious claim 34 because the attribute data describing the available files included displayable text describing the episode by, for example, indicating the subject or date of the content included in that episode. *See, e.g.,* 9/9/14 PM Tr. at 80, 93, 96, 135; 9/10/14 PM Tr. at 112.

## H.  Each of the Independent References Renders Claims 31-34 Obvious

Each prior art reference anticipates the asserted claims for the reasons described above. In addition, and as also described above, claims 31-34 of the '504 patent would have been obvious based on each anticipation reference alone based on the knowledge of one of ordinary skill in the art and common sense.  Moreover, Personal Audio failed to provide evidence of secondary considerations of non-obviousness.

    1.  <u>Claim 31</u>

*[1] one or more data storage servers*

To the extent any argument is made that an anticipation reference does not disclose this element, claim 31 would nevertheless be obvious because each such reference discloses a web server and, prior to May 1996, it was conventional for a web server to be a computer that had a processor connected to the Internet via a communication interface and that had storage facilities coupled to the processor for storing web pages and other data files. 9/10/14 PM Tr. at 64 (testimony of Dr. Porter); 9/8/14 PM Tr. at 73 (Personal Audio did not invent data storage servers); 9/10/14 AM Tr. at 24; 9/9/14 AM Tr. at 90 (Dr. Almeroth conceding the presence of data storage servers). It would take nothing other than routine skill and common sense to incorporate a data storage server in a web server and its use would have been predictable by one of ordinary skill in the art.

*[2] one or more communication interfaces . . . to the requesting client device*

To the extent any argument is made that an anticipation reference does not disclose this element, claim 31 would nevertheless be obvious because each such reference discloses a web server and, prior to May 1996, it was conventional for a web server to be a computer that had a processor connected to the Internet via a communication interface and that had storage facilities coupled to the processor for storing web pages and other data files. 9/10/14 PM Tr. at 64 (testimony of Dr. Porter). And it was known that any website would have a communications interface to interact and receive responses from user devices.  9/10/14 PM Tr. at 64 (testimony of Dr. Porter).   Therefore it would take nothing other than routine skill to incorporate a communication interface in a web server and their use would have been predictable by one of ordinary skill in the art.

> *[3] one or more processors coupled to said one or more data*
> *storage servers and to said one or more communications interfaces*

To the extent any argument is made that an anticipation reference does not disclose this element, claim 31 would nevertheless be obvious because each such reference discloses a web server and, prior to May 1996, it was conventional for a web server to be a computer that had a processor connected to the Internet via a communication interface and that had storage facilities coupled to the processor for storing web pages and other data files. *See* 9/10/14 PM Tr. at 65-66 (testimony of Dr. Porter). Processors were well-known as of May 1996. *See* 9/08/14 PM Tr. at 73 (Personal Audio did not invent processors); 9/10/14 AM Tr. at 24. It would take nothing other than routine skill to obtain a web server with a processor and their use would have been predictable by one of ordinary skill in the art.

> *[4] storing one or more media . . . at a storage location specified by a*
> *unique episode URL*;

To the extent any argument is made that an anticipation reference does not disclose a processor for storing media files at a storage location specified by a unique URL, claim 31 would nevertheless be obvious because each reference discloses media files hosted on a web server and a file by definition is stored data. *See, e.g.,* 9/11/14 PM Tr. at 128. And URLs specifying storage locations existed prior to Personal Audio's alleged invention.  9/8/14 PM Tr. at 73; 9/10/14 AM Tr. at 26.  Moreover, when a media file is stored at a storage location served by a web server, it would have been obvious to use a unique episode URL to specify that storage location, as that would have been the conventional method used to specify the location at which a file is stored.

To the extent any argument is made that an anticipation reference does not disclose a processor for storing media files representing episodes, claim 31 would nevertheless be obvious because whether a media file represents an episode or represents something else the structure of

the media file does not change. It is common sense that one can store any type of audio data in a media file, and it takes nothing more than routine skill to store a media file that represents an episode since the process involved in storing a file that represents an episode is the exact same process that is involved in storing a media file that does not represent an episode.

To the extent any argument is made that an anticipation reference does not disclose a processor for storing media files representing episodes as the media files become available, claim 31 would nevertheless be obvious because storing a media file as it become available is predictable and takes nothing more than routine skill.

> *[5] from time to time, as new episodes represented in said series of episodes . . . . identified by a predetermined URL*

To the extent any argument is made that an anticipation reference does not disclose this element, claim 31 would nevertheless be obvious.

First, it is obvious to update web pages because it was a matter of common sense, predictable, and well known to keep a web page up to date so that the information on it is current and evolve the page over time as HTML evolves over time, otherwise the web page will get stale. *See e.g.*, 9/10/14 PM Tr. at 89 (testimony of Dr. Porter). And it would take nothing other than routine skill to update a web page. 9/10/14 PM Tr. at 89 (testimony of Dr. Porter). Each reference discloses a web page that provides at least one link to an available episode in a continuing series of episodes. It would be obvious to update the web page as new episodes become available so that the web page will stay current. 9/8/14 PM Tr. at 74 ("it was also known to update webpages from time to time by changing a webpage and leaving the URL the same, correct? A. Yes. Webpages had been updated.").  Likewise, it would be obvious to make available full episodes of series in addition to news segments and other types of episodes.

Second, it would make no sense to store an updated web page in some non-predetermined location because then the page would be harder to find. In short, it is common sense to store web pages that you want people to view in predetermined locations.

> *[6] said updated version of said compilation file containing . . .*
> *media files representing said given one of said episodes; and*

To the extent any argument is made that an anticipation reference does not disclose this element, claim 31 would nevertheless be obvious for several reasons. There are only a finite number of design choices to making episodes in a series available, and a person having ordinary skill in the art would recognize that creating a single file that lists all available episodes does not yield any unexpected results. 9/8/14 PM Tr. at 73-74 (Personal Audio did not invent "having two or more links to media files on a website"); 9/10/14 AM Tr. at 25 (did you invent table of contents of websites that had hyperlinks in them to audio programs? ANSWER: I don't know. There's -- there's – I don't think we did.").  And it was well known to provide to a user a list of multiple items of content to choose from as demonstrated by Surfpunk, the NCSA Website, the NRL Website, and the RealAudio Website.

To the extent any argument is made that an anticipation reference does not disclose "*displayable text describing said given one of said currently available episodes*," claim 31 would nevertheless be obvious because each reference discloses a web page with a link to a media file and it is conventional to include at least some text to describe links on a web page. *See, e.g.,* 9/10/14 PM Tr. at 75-76; 9/10/14 AM Tr. at 64-64; 9/11/14 AM Tr. at 9. Moreover, for any web page that has a link to some information (*e.g.*, a media file) it is common sense to have associated with the link displayable text that describes the information to which the link points because otherwise a user of the page would not have any idea whether the information is useful or desired.

22

To the extent any argument is made that an anticipation reference does not disclose that the compilation file includes "*one or more episode URLs specifying the storage locations of one or more corresponding media files representing said given one of said episodes,*" claim 31 would nevertheless be obvious for several reasons. One way for HTML documents to link to files is by using the HTML "<A>" or anchor tag. To identify the target resource (*e.g.*, a file to be linked to) the <A> tag conventionally includes a URL that specifies the storage location of the resource.  It would take nothing other than routine skill to include in a web page a URL that specifies the storage location of a media file.

> *[7] employing one of said one or more communication interfaces to*:
>
> *(a) receive a request from a . . . ;*
>
> *(b) download said updated version . . . ; and*
>
> *(c) thereafter receive and respond to a request . . . .*

To the extent any argument is made that an anticipation reference does not disclose employing a single communication interface to perform steps a, b, and c, claim 31 would nevertheless be obvious. Prior to Personal Audio, communications interfaces existed on the internet.  9/10/14 AM Tr. at 26.  And whether a web server has a single communication interface or multiple communication interfaces is a mere design choice and no unexpected results arise from using more than one communication interface. 9/10/14 PM Tr. at 152.  Likewise, to the extent any anticipation reference does not disclose these elements, claim 31 would nevertheless be obvious because web servers are designed to receive requests from a requesting client device (web browser) and, in response to a request from a web browser, transfer the requested information to the web browser. 9/10/14 AM Tr. at 26.

23

2.  <u>Claim 32</u>

     *32. The apparatus as set forth in claim 31 wherein at least some of said media files contain digital compressed audio recordings that may be reproduced in audible form by a requesting client device.*

     To the extent any argument is made that an anticipation reference does not disclose this element, claim 32 would nevertheless be obvious because, due to bandwidth concerns prior to May 1996, the preferred media file formats for media files intended to be downloaded or streamed from websites (*e.g.*, .au and .ra) were formats that used compression. *See*, e.g., 9/9/14 PM Tr. at 123-24; 9/10/14 PM Tr. at 74-75. Additionally, it was well known for websites that hosted media files to utilize media files that contained digital compressed audio recordings. 9/10/14 AM Tr. at 27 ("So by January of 1996, compression technology was well-known for sending audio files? ANSWER: It was -- yeah, it was -- it was.").

3.  <u>Claim 33</u>

     *33. The apparatus as set forth in claim 31 wherein at least some of said media files contain text data which may be displayed or reproduced in spoken audible form by a requesting client device.*

     To the extent any argument is made that an anticipation reference does not disclose this element of claim 33, claim 33 would nevertheless be obvious. The feature of putting text data, which is inherently displayable, into an audio or video file was well known in the art before May 1996. *See e.g.*, Jan Ozer, Editors' Choice: RealAudio, PC Magazine, March 26, 1996 (DTX 172); Karpinski at 388 (DTX 77, 77a); 9/9/14 PM Tr. at 73, 80, 96.

     Therefore to the extent that any argument is made that any anticipation reference does not anticipate because the media files do not contain text data, a person of ordinary skill would have found it obvious to include text file in the media file. 9/10/14 AM Tr. at 21. In short, the difference between storing the text data in the media file and storing the text data in a file

associated with the media file is a trivial difference, and, at the time of the invention, it would have been obvious to a person having ordinary skill in the art to place text data in a media file.

>    4. <u>Claim 34</u>

> *34. The apparatus set forth in claim 33 wherein said attribute data for each given one of said episodes further includes displayable text data describing said given one of said episodes.*

To the extent any argument is made that an anticipation reference does not disclose the elements of claim 34, claim 34 would nevertheless be obvious because each reference discloses a web page with a link to a media file and it is conventional to include at least some minimal text to describe links on a web page. *See, e.g.,* 9/10/14 PM Tr. at 75-76; 9/10/14 AM Tr. at 64-64; 9/11/14 AM Tr. at 9.  For any web page that has a link to some information it is common sense to have associated with the link displayable text that describes the information to which the link points because otherwise a user of the page would not have any idea whether the information is useful or desired.

In sum, the evidence establishes that to extent any element is missing from any of the asserted prior art references, that element would have been obvious as a matter of law for the asserted claims.

## IV.   CONCLUSION

For the above reasons, Defendant respectfully requests that this Court find that the asserted claims are invalid as a matter of law.

Dated: September 14, 2014

Respectfully submitted,

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
Texas State Bar No. 00784720
jainsworth@wilsonlawfirm.com
Wilson, Robertson & Cornelius, P.C.
One American Center
909 ESE Loop 323, Suite 400
Tyler, TX 75701
(903) 509-5000 (telephone)
(903) 509-5092 (facsimile)

Steven Lieberman
slieberman@rothwellfigg.com
Sharon L. Davis
sdavis@rothwellfigg.com
Brian S. Rosenbloom
brosenbloom@rothwellfigg.com
Jennifer Maisel
jmaisel@rothwellfigg.com
Rothwell, Figg, Ernst & Manbeck, PC
607 14th Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040 (telephone)
(202) 783-6031 (facsimile)

*Attorneys for Defendant*
*CBS Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this notice was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on September 14, 2014.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth