# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PERSONAL AUDIO, LLC, | |
| Plaintiff, | |
| v. | 2:13-cv-00270-JRG-RSP |
| CBS CORPORATION, | JURY TRIAL DEMANDED |
| Defendant. | |

**CBS CORPORATION'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OF NON-INFRINGEMENT UNDER THE CORRECT CONSTRUCTION OF "DOWNLOADING" AND/OR "EPISODES"**

Defendant CBS Corporation ("CBS"), by and through its counsel, respectfully submits this brief in support of its renewed motion for judgment as a matter of law of non-infringement under the correct construction of "downloading" and "episodes" under Fed. R. Civ. P. 50(b).

## I. INTRODUCTION

Plaintiff Personal Audio, LLC ("Personal Audio" or "Plaintiff") failed to provide sufficient evidence that CBS infringes claims 31-34 of U.S. Patent No. 8,112,504 ("the '504 patent") under a correct construction of "downloading" or "episodes." Moreover, CBS has produced affirmative evidence establishing that it does not infringe the '504 patent under the correct construction of "downloading" and/or "episodes." This Court should therefore grant judgment as a matter of law in favor of CBS. Fed. R. Civ. P. 50(b); *Anthony v. Chevron United States*, 284 F.3d 578, 582-83 (5th Cir. 2002).

## II. LEGAL STANDARD

Judgment of a matter of law is warranted when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The Fifth Circuit "uses the same standard to review the verdict that the district court used in first passing on the motion." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). The Supreme Court has explained that the "standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The Court "may not make credibility determinations or weigh the evidence, as those are solely functions of the jury." *Id*. at 150-51. Thus, judgment as a matter of law is appropriate when "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997). "When a patent infringement verdict is based on an incorrect claim construction, [the Federal

1

Circuit will] reverse the trial court's denial of a motion for judgment as a matter of law if no reasonable jury could have found infringement under the proper claim construction." *800 Adept, Inc. v. Murex Securities, Ltd.*, 539 F.3d 1354, 1366 (Fed. Cir. 2008).

## III.  ARGUMENT

### A. Personal Audio Failed to Provide Sufficient Evidence that CBS Infringed Under a Correct Construction of "Downloading"

CBS contends, as it did during the claim construction process, that "downloading" as used in the '504 patent means "transferring/transfer the file … to the requesting client device for non-temporary storage and later use." (Dkt. 86) at 9.

Under the ordinary and customary meanings of "downloading" and "streaming," downloading a file to a computer requires that the file be transmitted to the computer and stored at the computer so that the file can be used at a later time, whereas streaming a file to a computer allows the computer to play the file only while it is being received, but no trace of the file is left on the computer after the file is played. *See RealNetworks, Inc. v. Streambox, Inc.*, No. C99-2070P, 2000 U.S. Dist. LEXIS 1889, *3-4 (W.D.Wash. Jan. 18, 2000) ("When an audio or video clip is 'streamed' to a consumer, no trace of the clip is left on the consumer's computer . . . . Streaming is to be contrasted with 'downloading,' a process by which a complete copy of an audio or video clip is delivered to and stored on a consumer's computer."); Declaration of Adam A. Porter, Ph.D. to Dkt. 86 ("Porter Declaration"), at ¶ 20 (defining "streaming" as "transmitting . . . data to a client that merely stores the data temporarily so that the client can process and output the data upon receipt."). As explained in *RealNetworks*, "[o]nce a consumer has downloaded a file, he or she can access the file at will." 2000 U.S. Dist. LEXIS 1889 at *3-4.

The specification of the '504 patent supports construing "downloading a data file" in accordance with its ordinary and customary meaning. The specification states that providing a

subscriber with the ability to load audio programs into an audio player and then play those audio programs upon request <u>at a later time</u> is a key feature of the alleged invention. *See* '504 patent at 8:62-9:11 (describing that audio program segments are stored in "the local mass storage unit [of the player device]" so as to "enable the user to easily move from program segment to program segment, skipping segments in a forward or reverse direction, or to jump to a particular segment, and thus alter the preprogrammed sequence").

The specification also provides that <u>downloading</u> the audio programs from a server is the mechanism used to load the audio programs into the audio player. *See, e.g.*, *id.* at 8:37-42 ("[T]he download file [is] . . . moved from storage unit 145 [in the host server] . . . into local storage at 107 in the client/player."). That is, the specification makes clear that downloading audio programs necessarily results in those programs being stored for later use.

For example, the specification states,

> [i]n accordance with <u>the invention</u>, it is desirable to download the equivalent of a full session's programming in addition to the currently scheduled session programs so that, in the event of a temporary communication link or host failure, programming will be nonetheless be <u>available</u>.

*Id.* at 23:57-61 (emphasis added); *see also Hill-Rom Servs. V. Stryker Corp.*, 775 F.3d 1367, 1372 (Fed. Cir. 2014) (noting that "disclaimer applies when the patentee makes statements such as "the present invention requires . . ." or "the present invention is . . ." or "all embodiments of the present invention are . . ."). Such data cannot be available unless it is stored for future use.

As another example, the specification states, "the subscriber may wish to designate for future play a program segment <u>already loaded into the player 103 by virtue of a prior download</u>," '504 patent at 18:60-62 (emphasis added), and further states, "hyperlinks of this type may be used to identify program segments which are <u>not available in the player 103 because they were not downloaded</u> for inclusion in a scheduled session." *Id.* at 14:55-57 (emphasis added). The

specification's teachings are clear that when a program segment is downloaded to the player the segment is stored so that it is available whenever the user requests it.

This teaching is further confirmed by figure 2, which "illustrates the sequence of major events which are executed [by] the program dissemination system contemplated by the invention." *Id.* at 8:17-19 (emphasis added). Figure 2 and the description thereof discloses that: (1) the audio programming and program sequence is first "download[ed]" to the player (step 207) (*i.e.*, "moved from storage unit 175 [within server 101] into local storage at 107 in the client/player 103"), (2) the user is then given an opportunity to edit the program sequence (step 211), and (3) after the downloading step the player will play the audio programming "at the request of the user" (step 212). *Id.* at 8:20-64. This request from the user could come anytime, anywhere, even when the user is driving in a car and disconnected from the program dissemination system. *Id.* at 23:62-24:3 ("In installations which utilize download information to a removable media cartridge or a transportable player which is then played back in an automobile or elsewhere, and hence disconnected from the data link to the host, it will of course be necessary to complete the download prior to the disconnection."); *see also id.* at 7:58-8:8 (disclosing that, to facilitate use of the system in an automobile, "the files downloaded from the host may be stored on a replaceable media, such as an optical disk cartridge, which may then be inserted into a portable computer or simplified player for mobile use."). The specification criticizes "conventional Internet radio players [as being] impractical for routine desktop use, and wholly unsuitable for use by an automobile drive[r]." *Id.* at 2:8-10.

The specification consistently and unambiguously teaches that a key feature of the invention is the ability to: (1) move program segments into the local mass storage unit of a player

4

device by virtue of downloading the program segments from a server; and (2) play those program segments whenever and wherever desired.

The prosecution history of the '504 patent confirms that "downloading data" does not include "streaming data." During prosecution the patentee distinguished claim 31 (the only asserted independent claim) from prior art <u>on the basis that the prior art disclosed streaming media content to a user's device, rather than storing the media content in the device</u>. The patentee stated,

> [the art] does not <u>store</u> either media content or the episode table of contents on the client workstations 600, but instead <u>streams</u> this information to the workstations from central storage in response to client requests.

Ex. D to Dkt. 86 at 19 (emphasis added).[1] Personal Audio made this same distinction between its invention and prior art that involved streaming many times during prosecution. *See* Ex. C to Dkt. 86 at 13, 16-18, 28; Ex. E to Dkt. 86 at 5, 9, 14-15. The distinction being made by Personal Audio between its invention as one that stores media content and the prior art that streams that content applied to Claim 31 (and therefore supported its patentability as Personal Audio claimed) only because Claim 31 required (through the downloading of media files) that the media files be stored, not simply streamed.

Dictionary definitions of the term "downloading" produced by Personal Audio in this case are consistent with the proposition that "downloading a file" to a computer requires that the computer not only receive the file but also store the file. *See* Ex. H to Dkt. 86 (The Free Dictionary) (defining downloading as the transferring of data "into <u>the memory</u> of [a] computer system.") (emphasis added). Additionally, many dictionaries, including those produced by

---

[1] While this statement and the statements that follow were made in sections of the Amendments addressing either claim 1 or claim 8, Personal Audio told the Patent Office that "claim 31 is believed to be allowable for the same reasons advanced above with respect to claims 1 and 8." Ex. C to Dkt. 86 at 22; Ex. D to Dkt. 86 at 29; and Ex. E to Dkt. 86 at 14-15.

Personal Audio, define "downloading" as the transfer of a copy of <u>a file</u> from one computer to another, *see* Ex. I to Dkt. 86, and define <u>a file</u> as "a collection of related computer data or program records <u>stored</u> by name." *See* Ex. J to Dkt. 86 (Websters) (emphasis added).

In sum, downloading requires that the file be stored on a client device. CBS, though, streams the media files. *See, e.g.*, 9/10/14 PM Tr. at 16-29 (testimony of Mr. Randell explaining how the video files are streamed from multiple locations and multiple files from Akamai); 9/9/14 AM Tr. at 95 (testimony of Personal Audio's expert, Dr. Almeroth, explaining that different definitions, or profiles, of "video files will be streamed to the user" from CBS.com).

> Claim 31 of the '504 patent recites, in pertinent part:
>
> Apparatus for disseminating a series of episodes represented by media files via the Internet as said episodes become available, said apparatus comprising: . . .
> *<u>one or more **communication interfaces**</u>* connected to the Internet for receiving requests received from remotely located client devices, and for *<u>responding to each given one of said requests by **downloading** a data file identified by a URL specified by said given one of said requests to the requesting client device</u>*,
> one or more processors . . . for: . . .
> employing <u>one of said one or more **communication interfaces**</u> to: . . .
> (b) download said updated version of said compilation file to said requesting client device; and
> (c) *<u>thereafter receive and respond to a request from said requesting client device for one or more media files identified by one or more corresponding episode URLs included in the attribute data contained in said updated version of said compilation files</u>*.

'504 patent, col. 50:35-51:10 (emphasis added). As shown above, claim 31 of the '504 patent recites: "one or more communication interfaces . . . for receiving requests. . . and responding to each given one of said requests by <u>downloading</u> a data file identified by a URL specified by said given one of said requests to the client device." Claim 31 of the '504 patent later recites that "one of said one or more communication interfaces" is employed to "(c) thereafter receive and

respond to a request from said requesting client device for one or more media files. . ..." Under a natural reading of claim 31, the "one of said one or more communication interfaces" employed to perform step (c) refers to one of the one or more communication interfaces recited earlier in the claim that receives and responds to each request by downloading a data file to the requesting client device. Thus, the plain and ordinary meaning of step (c) recited in claim 31 of the '504 patent is that the communication interface responds to a request received from a client device for an identified media file by downloading the identified media file to the client device. *Cf.* Dkt. 182 at 35 (noting that step (c) claim language "does not include a downloading requirement" but holding that step (c) has plain and ordinary meaning).

The uncontroverted evidence is that the video is streamed and the player discards the video data after it plays the video. There is no evidence in the record suggesting that CBS.com transfers the video files for non-temporary storage or later use. Thus, under the proper construction, no reasonable jury could find infringement of the asserted claims that all require communication interfaces for downloading the media files and motion for judgment as a matter of law should be granted. *See, e.g., 800 Adept*, 539 F.3d at 1366.

  **B.**  **Personal Audio Failed to Provide Sufficient Evidence that CBS Infringed Under a Correct Construction of "Episodes"**

Likewise, CBS contends that "episodes," as used in the '504 patent, means "audio programs." The specification of the '504 patent makes plain that the claimed invention is an audio player that plays episodic audio files and the accompanying audio program delivery system. Personal Audio's attempt to broaden the term "episodes" to include "a television show" is contrary to the specification.

Claims should be read first and foremost in light of the specification, which is "the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321

7

(Fed. Cir. 2005) (en banc). "In reviewing the intrinsic record to construe the claims, we strive to capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments or allow the claim language to become divorced from what the specification conveys is the invention." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). When the patent specification "describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see also AstraZeneca AB v. Hanmi USA, Inc.*, No. 2013-1490, 2013 WL 6670610, at *3 (Fed. Cir. Dec. 19, 2013) (claim terms limited to six cations enumerated in the "present invention" description even though the claims contained no such enumeration); *Retractable Techs.*, 653 F.3d at 1305 (limiting claimed "body" to a one-piece structure in light of specification's description of "the invention" as a one-piece body even though claims contained ambiguity as to whether "body" could be two pieces).

Here, the specification repeatedly and expressly defines the invention as one for playing audio files and the episodes as audio programs. The Abstract describes the invention as an "audio program and message distribution system." The Background of the Invention states that the invention's object is "to provide easy access to rich selection of audio programming …." '504 patent at 2:11-17. The Summary of the Invention states, "[t]he present invention takes the form of an audio program player which automatically plays a predetermined schedule of audio program segments . . .." *Id*. at 2:20-25. Nowhere in the Summary of the Invention is video or episodic content other than audio even mentioned. *Id*. at 2:21-4:6. In fact, throughout the specification, "episodes" and "media file" refer to audio files. *See id*. at 2:11-17; 2:21-56; 2:57-63; 3:40-42; 5:63-6:2; 6:22-31; 19:36-58; 12:39-61; 19:61-62; 28:17-18; 38:42-44; 36:10-25;

8

39:36-45; 40:05-08; Fig. 1, element 131.  Indeed, one of the key aspects of the invention described in the specification is that the programming could be selected "without the need for a visual display screen."  *Id*. at 2:11-17.  If selecting content and navigating without need for a visual display constitutes a key aspect of the invention, then the invention cannot be displaying television shows.  Reading "episodes" in light of the specification confirms that, because the invention is an audio player system that plays audio files, the claimed "episodes" are audio programs, not television shows. *See Phillips*, 415 F.3d at 1321; *Verizon*, 503 F.3d at 1308.

In addition, in one of its dependent claims, the invention of claim 31 is characterized as one directed to audio programs.  Claim 35, which depends indirectly from claim 31, uses the descriptor "audio program player" to refer to the apparatus claimed in claims 31, 33 and 34 and requires that the compilation file "further includes displayable text describing said series of episodes."  That claim language indicates that the patentee views the apparatus of claim 31 as directed to playing episodes of audio programs.

The accused CBS television episodes streamed to end users are plainly videos, and not "audio programs."  *See, e.g.,* 9/10/14 PM Tr. at 32 (testimony of Mr. Randell explaining that the episodes made available at CBS.com are "all original TV programming").  Indeed, shortly before trial, Personal Audio dropped all of its claims addressed to audio podcasts.  (Dkt. 294). Therefore, under this construction, no reasonable jury could find infringement and the motion for judgment as a matter of law should be granted.

IV.   CONCLUSION

For the above reasons, CBS respectfully requests that this Court find that CBS has not infringed the asserted claims as a matter of law.

Dated:  October 14, 2014

Respectfully submitted,

*/s/ Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth
Texas State Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
One American Center
909 ESE Loop 323, Suite 400
Tyler, TX 75701
(903) 509-5000 (telephone)
(903) 509-5092 (facsimile)

Steven Lieberman
slieberman@rothwellfigg.com
Sharon L. Davis
sdavis@rothwellfigg.com
Brian S. Rosenbloom
brosenbloom@rothwellfigg.com
Jennifer Maisel
jmaisel@rothwellfigg.com
ROTHWELL, FIGG, ERNST & MANBECK, PC
607 14th Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040 (telephone)
(202) 783-6031 (facsimile)

*Attorneys for Defendant*
*CBS Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this notice was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on October 14, 2014.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth